Filed 12/16/16 (on remand)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| PROPERTY RESERVE, INC., | C067758 |
| Petitioner; | (JCCP No. 4594) |
| v. | |
| THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, | OPINION ON REMAND |
| Respondent; | |
| DEPARTMENT OF WATER RESOURCES, | |
| Real Party in Interest. | |

1

| | |
|---|---|
| CAROLYN A. NICHOLS, as Trustee, etc., et al., | C067765 |
| Petitioners, | (JCCP No. 4594) |
| v. | |
| THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, | |
| Respondent; | |
| DEPARTMENT OF WATER RESOURCES, | |
| Real Party in Interest. | |
| COORDINATED PROCEEDINGS SPECIAL TITLE (RULE 3.550) DEPARTMENT OF WATER RESOURCES CASES. | C068469 |
| | (JCCP No. 4594) |

OPINION ON REMAND from the California Supreme Court (case No. S217738). APPEAL from a judgment of the Superior Court of San Joaquin County and ORIGINAL PROCEEDINGS in mandate and prohibition. John P. Farrell, Judge. (Retired judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Matteoni, O'Laughlin & Hechtman, Norman E. Matteoni, Gerry Houlihan; Kirton & McConkie and Christopher S. Hill for Petitioner Property Reserve, Inc.

Freeman, D'Aiuto, Pierce, Gurev, Keeling & Wolf, Thomas H. Keeling, Arnold J. Wolf; Nomellini, Grilli & McDaniel and Dante J. Nomelini, Jr., for Petitioners Mark G. Scribner, Jr., Randy J. Baranek, Siara Andrews, J.H. Jonson & Sons, Inc., Arnaudo Bros.,

Delta Wetlands Properties, The 2000 teVelde Family Trust, The Biagi Living Trust Agreement, The Carolyn Nichols Revocable Living Trust dated 12/09/1999, Carolyn A. Nichols, as Trustee, Venice Island, Coney Island Farms, Inc., Robert A. DalPorto, Jr., Islands, Inc., Richard Brann, as Trustee, S.S. & S.M. Oates Family Trust, Wilson Vineyard Properties, Eileen V. Nichols Revocable Living Trust dated 12/09/1999, Eileen V. Nichols, as Trustee, Victoria Island, L.P., Lucille L. Christensen Family Trust dated 8/31/2004, Lucille J. Christensen, as Trustee, Smith and Karen Cunningham, Zuckerman Mandeville, Inc., and Heritage Land Co., Inc.

Downey Brand and Scott D. McElhern for Petitioners CCRC Farms, LLC and Tuscany Research Institute.

Somach Simmons & Dunn, Stuart L. Somach and Daniel Kelly for Petitioners Sutter Home Winery, Inc., and Delta Ranch Partnership.

J. David Breemer and Jonathan Wood for Pacific Legal Foundation as Amicus Curiae on behalf of Petitioners.

Luke A. Wake; Damon Key Leong Kupchak Hastert, Robert H. Thomas; Manatt, Phelps & Phillips and Edward G. Burg for Owners' Counsel of America and National Federation of Independent Business Small Business Legal Center as Amici Curiae on behalf of Petitioners.

Jenny & Jenny and Scott E. Jenny as Amici Curiae on behalf of Petitioners.

Nancy N. McDonough and Kari E. Fisher for California Farm Bureau Federation as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Kamala D. Harris, Attorney General, Steven M. Gevercer and Kristin G. Hogue, Assistant Attorneys General, Alberto González, John M. Feser, Jr., Michael P. Cayaban, James C. Phillips, Neli N. Palma, and Gregory D. Brown, Deputy Attorneys General, for Real Party in Interest Department of Water Resources.

Jeanne Scherer, David Gossage and Lucille Y. Baca for California Department of Transportation as Amicus Curiae on behalf of Real Party in Interest.

Meyers, Nave, Riback, Silver & Wilson and David W. Skinner for League of California Cities, California State Association of Counties and Association of California Water Agencies as Amici Curiae on behalf of Real Party in Interest.

Woodruff, Spradlin & Smart, Gary C. Weisberg and Laura A. Morgan for Orange County Transportation Authority as Amicus Curiae on behalf of Real Party in Interest.

Stephanie D. Morris for State Water Contractors as Amicus Curiae on behalf of Real Party in Interest.

Best, Best & Krieger, Stefanie D. Hedlund and Kendall H. MacVey for Riverside County Transportation Commission as Amicus Curiae on behalf of Real Party in Interest.

In *Property Reserve, Inc. v. Superior Court* (2016) 1 Cal.5th 151 (*Property Reserve I*), the California Supreme Court reversed a decision of this court and remanded the matter for us to consider issues we had not addressed. We address them now. The Department of Water Resources (Department) petitioned the trial court for orders authorizing it to enter onto various properties to conduct precondemnation studies and surveys. Before the trial court convened a hearing on the matter, the landowners requested to conduct discovery. The trial court denied the request, ruling the proceeding was exempt from discovery. The landowners also objected to the Department not naming allegedly indispensable parties. The trial court held the rules governing indispensable parties did not apply to this matter, but it ordered the parties to notify all the persons and entities the landowners claimed were indispensable parties.

The landowners both petitioned for writ relief against, and appealed from, the trial court's award of an entry order, challenging the constitutionality of the precondemnation entry statutes and attacking the court's decisions to deny discovery and not order the joinder of indispensable parties. *Property Reserve I* resolved the constitutional issues, but the high court directed us to address the landowners' claims against the trial court's rulings on discovery and indispensable parties.

We conclude the trial court erred in holding the proceeding was exempt from discovery, but we also find the landowners have not shown prejudicial error. We also conclude the landowners' contention regarding indispensable parties is moot, as the trial

4

court gave the landowners all of the relief they sought and which we could have provided. We affirm.

## STATUTORY BACKGROUND

Before proceeding, we reacquaint the reader with the precondemnation entry statutes and the process they prescribe for authorizing precondemnation entries onto property, as explained by the Supreme Court. "[Code of Civil Procedure] Section 1245.010 sets forth the general authority granted to public entities by the precondemnation entry and testing statutes.[1] It provides: 'Subject to requirements of this article, any person authorized to acquire property for a particular use by eminent domain may enter upon property to make photographs, studies, surveys, examinations, tests, soundings, borings, samplings, or appraisals or to engage in similar activities reasonably related to acquisition or use of the property for that use.' (*Ibid.*)

"Section 1245.020 establishes the circumstances under which the property owner's consent or, alternatively, a court order is required before a public entity can enter property to conduct precondemnation testing. The section provides: 'In any case in which the entry and activities mentioned in Section 1245.010 will subject the person having the power of eminent domain to liability under Section 1245.060, before making such entry and undertaking such activities, the person shall secure: [¶] (a) The written consent of the owner to enter upon his property and to undertake such activities; or [¶] (b) An order for entry from the superior court in accordance with Section 1245.030.' (*Ibid.*)" (*Property Reserve I, supra,* 1 Cal.5th at p. 175.)

"Section 1245.030 sets forth the procedure governing an order for entry. The section provides: '(a) The person seeking to enter upon the property may petition the court for an order permitting the entry and shall give such prior notice to the owner of the

---

[1]     Subsequent references to undesignated sections are to the Code of Civil Procedure.

5

property as the court determines is appropriate under the circumstances of the particular case. [¶] (b) Upon such petition and after such notice has been given, the court shall determine the purpose for the entry, the nature and scope of the activities reasonably necessary to accomplish such purpose, and the probable amount of compensation to be paid to the owner of the property for the actual damage to the property and interference with its possession and use. [¶] (c) After such determination, the court may issue its order permitting the entry. The order shall prescribe the purpose for the entry and the nature and scope of the activities to be undertaken and shall require the person seeking to enter to deposit with the court the probable amount of compensation.' (*Ibid.*)

"Although section 1245.030 does not explicitly require the trial court to hold a hearing and afford the property owner an opportunity to present evidence relevant to the factors that the court is required to consider under section 1245.030, we conclude a hearing and an opportunity to be heard on a public entity's entry petition is clearly contemplated by and implicit in the statutory scheme. The notice to the property owner required by section 1245.030 would make little sense if the owner had no ability to respond to the notice and make its views known prior to the issuance of any order, and the very next section—section 1245.040—explicitly provides that the court may modify any order entered under section 1245.030 'after notice *and hearing*' (§ 1245.040, subd. (a), italics added)." (*Property Reserve I*, *supra,* 1 Cal.5th at pp. 175-176.)

"Section 1245.040 authorizes the trial court, after notice and hearing, to modify any order entered under section 1245.030 and to require the public entity to deposit additional funds if it determines the initial deposit is inadequate. The section provides: '(a) The court, after notice and hearing, may modify any of the provisions of an order made under Section 1245.030. [¶] (b) If the amount required to be deposited is increased by an order of modification, the court shall specify the time within which the additional amount shall be deposited and may direct that any further entry or that specified activities

6

under the order as modified be stayed until the additional amount has been deposited.' (§ 1245.040.)

"Section 1245.050 governs the deposited funds. It provides: '(a) Unless sooner disbursed by court order, the amount deposited under this article shall be retained on deposit for six months following the termination of the entry. The period of retention may be extended by the court for good cause. [¶] (b) The deposit shall be made in the Condemnation Deposits Fund in the State Treasury, or, upon the written request of the plaintiff filed with the deposit, in the county treasury. . . .' (*Ibid.*)

"Finally, section 1245.060 addresses the property owner's right to recover damages. The section provides: '(a) If the entry and activities upon property cause actual damage to or substantial interference with the possession or use of the property, whether or not a claim has been presented in compliance with [the Tort Claims Act presentation requirements], the owner may recover for such damage or interference in a civil action or by application to the court under subdivision (c). [¶] (b) The prevailing claimant in an action or proceeding under this section shall be awarded his costs and, if the court finds that any of the following occurred, his litigation expenses incurred in proceedings under this article: [¶] (1) The entry was unlawful. [¶] (2) The entry was lawful but the activities upon the property were abusive or lacking in due regard for the interests of the owner. [¶] (3) There was a failure substantially to comply with the terms of an order made under Section 1245.030 or 1245.040. [¶] (c) If funds are on deposit under this article, upon application of the owner, the court shall determine and award the amount the owner is entitled to recover under this section and shall order such amount paid out of the funds on deposit. If the funds on deposit are insufficient to pay the full amount of the award, the court shall enter judgment for the unpaid portion. [¶] (d) Nothing in this section affects the availability of any other remedy the owner may have for the damaging of his property.' (*Ibid.*)" (*Property Reserve I, supra*, 1 Cal.5th at pp. 176-177.)

7

In order to bring this proceeding into compliance with the California Constitution, the Supreme Court reformed section 1245.060, subdivision (c), "to afford the property owner the option of obtaining a jury trial on damages at the proceeding prescribed by section 1245.060, subdivision (c)." (*Property Reserve I, supra*, 1 Cal.5th at p. 208.)

FACTS AND PROCEDURAL HISTORY

"In this case, the Department proposed to enter more than 150 privately owned properties in the Sacramento-San Joaquin Delta area (Delta) in order to conduct environmental and geological studies and testing needed to investigate the feasibility of adding new water conveyance facilities—such as tunnels or additional canals—in the Delta and to determine the suitability of potential alternative routes for the contemplated project. . . .

"Because the alternative potential locations for the new facilities cross or lie beneath privately owned lands, the Department sought to enter the private properties in question to ascertain preliminary environmental and geological information about the properties. . . .

"Between 2008 and 2009, the Department filed more than 150 separate petitions in superior court pursuant to section 1245.030, seeking entry onto properties located in five separate counties—San Joaquin, Contra Costa, Solano, Yolo, and Sacramento. In June 2009, the Department filed a request to coordinate in a single proceeding the numerous entry petitions at issue here, and in March 2010, the superior court granted the request, coordinating the petitions in a single proceeding before the San Joaquin County Superior Court.

"In September 2010, the Department filed a 'Master Amended Petition' in which it sought authority to conduct what the petition characterized collectively as 'environmental activities' with respect to all properties and 'geological activities' with respect to 35 properties. . . .

8

"Thereafter, at a case management conference in October 2010, the trial court bifurcated the upcoming hearing on the Master Amended Petition, setting an initial hearing limited to the proposed environmental activities and a subsequent hearing for the proposed geological activities." (*Property Reserve I, supra*, 1 Cal.5th at pp. 168-169.)

The trial court took other actions at that case management conference and the next conference that this appeal challenges. First, the court denied a request by the landowners to conduct discovery. Second, it ordered the parties to give notice to all lessees of the affected properties and to affected reclamation districts. It then overruled the landowners' objection contending the Department failed to join all indispensable parties to the action. We will describe these rulings in detail below.

The trial court held separate hearings on the proposed environmental activities and the proposed geological activities. (*Property Reserve I, supra*, 1 Cal.5th at pp. 169-173.) Following the hearings, it authorized entry to conduct the environmental activities, subject to conditions, but it denied entry to conduct the geological activities. (*Id*. at pp. 169-170, 173.)

After the trial court issued its order granting entry for the environmental activities, landowners filed petitions for writs of mandate with our court. After the court entered its order denying entry for the geological activities, the Department and the landowners appealed. (*Property Reserve I, supra*, 1 Cal.5th at p. 173.)

In a 2-to-1 decision, our court affirmed the trial court's order denying entry to conduct the geological activities, and we reversed the order granting entry to conduct the environmental activities. The majority opined the proposed activities constituted a taking or damaging of property, and that the entry statutes did not provide the protections to landowners required by our state Constitution before a public agency may intentionally take or damage private property. (*Property Reserve I, supra*, 1 Cal.5th at pp. 173-174.)

The Supreme Court reversed our decision in *Property Reserve I*. Without determining whether the proposed geological activities and environmental activities

9

would constitute a taking or damaging under the state Constitution, the high court ruled the entry statutes provide a constitutionally valid eminent domain proceeding by which a public agency holding the power of eminent domain may enter property to conduct precondemnation tests so long as the entry statutes are reformed to permit a landowner to obtain a jury determination of damages.  (*Property Reserve I, supra*, 1 Cal.5th at p. 167.)

The Supreme Court remanded the matter to this court to address issues the landowners raised in their appeal but we did not reach in light of our constitutional ruling. (*Property Reserve I, supra,* 1 Cal.5th at p. 213, fn. 34.)  The landowners, designated in our court as petitioners and appellants,[2] contend the trial court erred when it denied their request to conduct discovery prior to the hearing and when it overruled their objection alleging failure to name indispensible parties.  The parties have briefed these issues.

DISCUSSION

I

*Discovery*

The landowners contend the trial court abused its discretion when it denied them the opportunity to conduct discovery.  They argue nothing in the entry statutes or *Property Reserve I* implies discovery is not allowed prior to the hearing on the petition. They contend both sides will need to conduct expert discovery into the basis of the other's valuation evidence, especially now that the landowners are entitled to a jury trial on valuation after the entry has been completed.

---

[2]     For purposes of this opinion, the term "landowners" refers to the following petitioners and appellants:  Mark G. Scribner, Jr.; Randy J. Baranek; Siara Andrews; J.H. Jonson & Sons, Inc.; Arnaudo Bros.; Delta Wetlands Properties; The 2000 teVelde Family Trust; The Biagi Living Trust Agreement; The Carolyn Nichols Revocable Trust dated 12/09/1999, Carolyn A. Nichols, as Trustee; Venice Island; Coney Island Farms, Inc.; Robert A. DalPorto, Jr.; Islands, Inc.; Richard Brann, as Trustee; The S.S. & S.M. Oates Family Trust; and Wilson Vineyard Properties.

10

The Department contends the trial court correctly denied discovery, as the entry statutes do not expressly provide such a right. It also claims allowing discovery would "blur the distinction" between a precondemnation proceeding, with its expedited procedure, and a classic condemnation proceeding, with its array of procedural rights, including discovery. The Department asserts discovery would serve no purpose except to slow the process of obtaining precondemnation entry.

We hold the trial court erred in concluding the proceeding was exempt from discovery and denying discovery on that basis. Both the Eminent Domain Law (§ 1230.010 et seq.) and the Civil Discovery Act (§ 2016.010 et seq.) authorize the landowner to engage in discovery, subject to the court's conventional discretion to manage and limit the discovery's scope, manner, and frequency. However, the landowners have not shown the error was prejudicial.

A. *Additional background information*

At the October 2010 case management conference, the trial court denied the landowners' request to conduct discovery. The court held the entry petition was a limited special proceeding, and not an "eminent domain proceeding," as that term is used in the Eminent Domain Law. As a result, the court concluded section 1230.040, which applies the rules of practice governing civil actions to eminent domain proceedings, did not apply to the entry petition proceedings.

The trial court stated "the limited intrusion or interference allowed under the entry provisions and the need for swift resolution supports *exemption* from the standard rules of civil practice. [¶] There is no right to discovery under the [Civil] Discovery Act or to all law and motion procedures applicable to proceedings leading to trial. This does not preclude a request to the court for discovery of a particular matter uniquely in [the Department's] control in the interest of a fair hearing. Likewise some law and motion procedures could still be applicable or subject to request." (Italics added.)

11

Despite so holding, the trial court at the same case management conference confirmed the hearings on the Department's petition would be evidentiary hearings. It stated "it had reviewed the numerous declarations that had already been submitted on behalf of many landowners describing concerns with the Department's proposed activities, and invited any property owner, prior to the upcoming hearings, to present additional evidence by declaration regarding any property-specific issues that could affect the scope of any order the court might ultimately issue. The court also directed the Department to be prepared to produce witnesses at the hearings who would testify in person with regard to the nature and scope of the proposed entries and activities and who would be subject to cross-examination by the court and landowners." (*Property Reserve I, supra,* 1 Cal.5th at p. 169.)

Indeed, at the hearings, the trial court took extensive testimony from Department employees regarding the proposed tests, and it allowed multiple counsel for the landowners to cross-examine the Department's witnesses.

B.      *Analysis*

" ' "Management of discovery generally lies within the sound discretion of the trial court. [Citations.] Where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court." ' (*Toshiba America Electronic Components v. Superior Court* (2004) 124 Cal.App.4th 762, 767-768.) However, ' " '[t]he scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' " [Citation.] To the extent the trial court's ruling is based on assertedly improper criteria or incorrect legal assumptions, we review those questions de novo.' (*Hypertouch, Inc. v. Superior Court* (2005) 128 Cal.App.4th 1527, 1537; see *Baker–Hoey v. Lockheed Martin Corp.* (2003) 111 Cal.App.4th 592, 605 [de novo review of a trial court ruling on the

12

allowance of costs is warranted where the determination of whether the criteria for costs in a particular context have been satisfied amounts to statutory construction and a question of law].)" (*In re Ins. Installment Fee Cases* (2012) 211 Cal.App.4th 1395, 1425-1426.)

The trial court incorrectly determined there was no right to discovery under the Civil Discovery Act. Section 1230.040, part of the Eminent Domain Law, states: "Except as otherwise provided in this title [the Eminent Domain Law], the rules of practice that govern civil actions generally are the rules of practice for *eminent domain proceedings*." (Italics added.) In *Property Reserve I*, the Supreme Court determined a precondemnation petition to enter is an eminent domain proceeding. (*Property Reserve I*, *supra,* 1 Cal.5th at p. 201, fn. 20.) Although the phrase "eminent domain proceeding" has traditionally referred to a classic condemnation action commenced by the filing of a complaint (*id.* at pp. 214-215 (conc. opn. of Liu, J.)), the court held the entry statutes "define a different type of eminent domain proceeding." (*Id.* at p. 201, fn. 20.) The rules of practice that govern civil actions, including those provided under the Civil Discovery Act, thus apply to precondemnation petitions to enter.

Even if the Supreme Court had not determined the entry petition was an eminent domain proceeding, the Civil Discovery Act would still apply. A petition to enter private property to conduct precondemnation testing is a special proceeding, and the Civil Discovery Act applies to special proceedings.

A special proceeding is " 'the type of case which was not, under the common law or equity practice, either an action at law or a suit in equity. [Citations.]' [Citation.] Special proceedings instead are established by statute. [Citations.] The term 'special proceeding' applies only to a proceeding that is distinct from, and not a mere part of, any underlying litigation. [Citation.] The term 'has reference only to such proceedings as may be commenced independently of a pending action by petition or motion upon notice in order to obtain special relief. [Citations.]' [Citation.]" (*People v. Superior Court*

13

*(Laff)* (2001) 25 Cal.4th 703, 725.) The proceeding to address a petition to enter was established strictly by statute and is not a part of any underlying litigation.

The Civil Discovery Act authorizes any party to "obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action." (§ 2017.010.) For purposes of the Civil Discovery Act, an " 'action' " includes "a special proceeding of a civil nature." (§ 2016.020, subd. (a).) The Legislature has not enacted a statute to preclude discovery on a precondemnation petition to enter. The Civil Discovery Act thus applies.

The entry statutes "establish a special, compact, and expedited procedure" (*Property Reserve I, supra,* 1 Cal.5th at p. 192), and a trial court of course may exercise its conventional authority to limit discovery as required. (§ 2017.010.) But the trial court here incorrectly determined the entry petition proceeding was exempt from the Civil Discovery Act.

Although we find error, we recognize that when a plaintiff appeals from a judgment to obtain review of a trial court's discovery orders, the plaintiff "must 'show not only that the trial court erred, but also that the error was prejudicial'; i.e., the plaintiff must show that it is reasonably probable the ultimate outcome would have been more favorable to the plaintiff had the trial court not erred in the discovery rulings. ([*Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 740]*, citing *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800-802.)" (*MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1045.) An appellant must "show that the error was prejudicial ([] § 475) and resulted in a 'miscarriage of justice' (Cal. Const., art. VI, § 13)." (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.)

The landowners have not made this showing. They do not assert prejudicial error in either their opening brief or their supplemental brief. Consequently, they do not show how they would have received a more favorable outcome in this litigation had the trial court allowed them to conduct their requested discovery. "[W]e cannot presume

14

prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice. (Cal. Const., art. VI, § 13; [citations].) Nor will this court act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial. [Citations.]" (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) Because there is no showing of prejudicial error, we affirm the trial court's ruling.

## II

### *Indispensable Parties*

The landowners contend the Department should have named lessees of their properties and reclamation districts that hold easements on their properties as indispensible parties to the petition. The trial court ruled lessees and reclamation districts were not indispensible parties because the term "indispensible party" refers to a party in an action in which a judgment will be entered. Nevertheless, the court ordered notice be given to the very parties the landowners claim were indispensible. The Department thus contends the landowners' contention is a "non-issue." We conclude the issue is moot.

A. *Additional background information*

At the October 2010 case management conference, the trial court ordered the parties to notify all lessees of the affected properties of the pending petition. The court stated: "[I]n keeping with the swift and simple procedures of the entry proceeding, the code provides that the persons seeking entry '. . . shall give such prior notice to the owner of the property as the court determines is appropriate under the circumstances of the particular case.' [(§ 1245.030, subd. (b).)] Since the person seeking entry will often only know the record owner, notice to such owner would be mandatory and usually formal. In terms of lessees and other possible owners of interests which might be affected in a substantial way, the form of notice might be posting the property or by having the record owner give notice to such persons."

15

The court directed the Department to prepare a form notice to lessees informing them of the pending action and the upcoming hearings and instructing them how to receive a copy of the master petition, file written opposition, and appear at the hearings. The court ordered the Department to mail the form notice to each owner with a letter informing the owner the court had ordered the owner to provide the notice to each lessee on the premises.

At the next case management conference and hearing in November 2010, the court overruled an objection by the landowners that indispensable parties had not been joined. The court wrote: "The term 'indispensable party' refers to a party in an action in which a judgment will be entered. All the factors the Code lists for consideration as to whether a party is indispensable are based on 'a judgment.' [(§ 389, subd. (b).)] As previously ruled, the petition does not constitute an 'action' and the entry order is not a judgment. Therefore the objection that indispensable parties have not been joined is overruled."

Because an entry order would not be against any person but would permit entry onto specific real property, the trial court believed the order was "similar to a warrant. Any person claiming an interest in the property would seem to have standing to ask the court to modify the order under Section 1245.040. This court welcomes input or opposition from any person claiming any form of ownership interest in the premises, so that the Order will be properly tailored if and when issued."

Accordingly, the trial court ordered the Department to serve by mail a notice similar to that prepared for lessees on all reclamation districts covering parcels affected by the petition.

B.    *Analysis*

The entry statutes require the government agency to give "such prior notice to the owner of the property *as the court determines is appropriate under the circumstances of the particular case*." (§ 1245.030, subd. (a), italics added.) This statute grants the trial court discretion to order the parties to give notice to all persons and entities that an entry

16

order could potentially affect. Here, the trial court wisely exercised its discretion under section 1245.030 and ordered the parties to notify the lessees and reclamation districts of the pending petition and their right to be heard. No one contends the parties did not comply with the court's order.

In giving notice to all affected persons and entities, the trial court and the Department acted consistent with the procedure followed in classic condemnation actions. In those actions, the condemning agency must name as defendants "those persons who appear of record or are known by the plaintiff to have or claim an interest in the property described in the complaint." (§ 1250.220, subd. (a).) In addition, the agency "may name as defendants 'all persons unknown claiming an interest in the property,' naming them in that manner." (§ 1250.220, subd. (c).)

Such persons named as unknown may still appear and participate in the action without being joined by the agency as indispensable parties. The statute states: "Any person who claims a legal or equitable interest in the property described in the complaint may appear in the proceeding. Whether or not such person is named as a defendant in the complaint, he shall appear as a defendant." (§ 1250.230.)

Here, the Department's master petition alleged the true names and capacities of defendants named as "does" were unknown, and that each of them "have or claim to have an interest in the subject properties . . . but that the nature , character and extent of such interest are unknown to petitioner." The trial court ordered notice to be given to all lessees, which the Department would not have known, and to the affected reclamation districts. Just as in classic condemnation actions, nothing in the entry statutes required the court to order the Department to name as defendants unknown parties who later received notice prior to the hearing.

" ' "[W]hen, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the

17

court will not proceed to a formal judgment, but will dismiss the appeal." ' [Citations.]" *Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 95-96.) We cannot offer the landowners any effective relief beyond what the trial court already gave them. As far as can be known from the record, everyone the landowners wanted named as defendants were notified of the petition and given an opportunity to participate as if they had been named in the petition. Because the landowners have already received the relief they seek, we deem their indispensable parties contention moot.

DISPOSITION

The orders denying the landowners' requests for discovery and joinder of indispensible parties are affirmed. Each party shall bear its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

                                                    NICHOLSON     , J.

I concur:

      HOCH           , J.

BLEASE, Acting P. J., Concurring.

I concur in the result reached by the majority. I write separately because, while I do not agree with the trial court's reason for denying discovery, I do not believe formal discovery is appropriate at the pre-entry stage at which it was presented here. Formal discovery is inappropriate at the initial stage of the preliminary entry proceeding because the issue to be determined at a potential trial is the amount of actual damage to the property and the value of the substantial interference with possession and use of the property as a result of the entry. Obviously, when such damage or interference has not yet occurred, no relevant discovery can be meaningfully conducted. The owners implicitly recognize this point because their argument on remand is limited to the need for discovery prior to trial to determine valuation issues--not for additional information related to the testing.

I acknowledge that the parties are fully entitled to formal discovery in a precondemnation proceeding if the matter goes to trial for damages. However, because of the expedited nature of the proceedings and the trial court's obligation under the statute as a fact-finder prior to entry, as well as the lack of any prejudice in this case, the trial court did not err in denying discovery at the initial stage of this proceeding.

Before discussing the reasons the trial court did not err, it is helpful to look at how the complete precondemnation proceeding works, and at what occurred below.

A precondemnation proceeding can go one of three ways: (1) the condemnor decides not to use the property for its project and the property owner is satisfied that the preliminary deposit of money is satisfactory compensation for the damage and use of the property; (2) the condemnor decides not to use the property for its project and the property owner, not being satisfied with the preliminary deposit, requests a jury trial on the issue of damage or use of the property; or (3) the condemnor decides to take the property for its project after conducting tests.

1

Only in the second scenario will the jury trial procedure under the precondemnation statutes be utilized. In the first scenario there is no need for a jury trial because the owner simply accepts the deposit as satisfactory payment. In the third scenario, the owner's remedy if damage occurs that is not recoverable as the fair market value of the property, is to file a compulsory cross-complaint within the classic eminent domain action. (Code Civ. Proc., § 426.70.)[1] Any precondemnation damage or loss of use is not recoverable in the main eminent domain action because recovery in eminent domain is limited to the fair market value of the property that is taken, and this amount does not include any preliminary actions of the condemnor relating to the taking of the property.[2] (§ 1263.330, subd. (c).) Consequently, only in the second scenario will any discovery be necessary within the precondemnation proceeding.

Prior to the order granting or denying entry, the only relevant issues for the trial court to determine are: (1) whether the entity proposing the tests has the power of eminent domain; (2) the purpose for the entry; (3) whether the nature and scope of the activities proposed are necessary to accomplish that purpose; and (4) the probable amount of compensation that should be paid to the owner of the property for the actual damage to the property and interference with its possession and use. (§§ 1245.010, 1245.030, subd. (b).) It is the trial court's duty to make the relevant factual determinations.

In this case, the Department of Water Resources (DWR) filed a petition for entry, to which it attached a description of the tests it proposed to conduct. Concurrently, it filed the declarations of eight employees further describing the testing and the

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

[2] For example, where crops are damaged prior to the filing of the complaint in the condemnation action, that loss cannot be recovered in the eminent domain proceeding and must be recovered by way of a compulsory cross-complaint because it presents new matter not directly related to the complaint.

2

justifications for the tests. The owners filed declarations in opposition to the entry. The court held two hearings that were unrelated to the matters at issue here. The owners filed more declarations detailing the potential harm the testing would cause them. The trial court conducted another hearing, at which it heard the concerns of the landowners and took extensive testimony from DWR employees regarding the proposed tests. Not only did the trial court ask questions, but also multiple counsel for the landowners conducted cross-examination of DWR's witnesses. Each side proposed general conditions to the entry for environmental testing. Another hearing was conducted regarding the entry for environmental testing. At this hearing, the landowners discussed their concerns with the details of the proposed testing. The trial court ordered each side to file posthearing briefs following the hearing. The court held another hearing at which it explained its tentative ruling. The parties then discussed the details of the entry order at length. Only after these numerous steps did the trial court finalize an entry order for environmental testing.

It is hard to imagine what more information the owners could legitimately seek through formal discovery at this point in the proceeding. In addition to setting forth the probable amount of compensation for each property, the order granting entry to conduct environmental testing set forth the type of testing permitted, the number of personnel allowed on the property, the number of days allowed for the testing, the type of equipment allowed during testing, and in some cases the time of day for testing. Even though the trial court denied the entry for geological testing, a significant amount of detailed information was presented for the court's evaluation.

Discovery prior to entry is not indicated for several reasons. First, as previously mentioned, the issues to be finally determined by the precondemnation proceeding-- actual damage and the value of loss of possession or use of the property--necessarily do not arise until after the testing is completed. The relevant issues prior to the order granting entry (whether the nature and scope of the activities are reasonably necessary to accomplish the purpose of the entry, and the probable amount of compensation) are

forward-looking. They have not yet occurred. The subject of most discovery is backward-looking, i.e., where, when, and how did the incident occur, who saw it, and what were the damages. The kind of simultaneous exchange of information needed prior to the entry order is best conducted in the manner the trial court handled it here. Formal discovery procedures are simply not well suited to the task.

The issues to be determined in a precondemnation trial, and the issues about which discovery is necessarily limited, are the amount of actual damage to the property and the value of the substantial interference with possession and use of the property. (§ 1245.060, subd. (a).) Potentially relevant as well is whether the entry was unlawful, whether the activities on the property "were abusive or lacking in due regard for the interests of the owner," or whether there was a failure to comply with the entry order or any modification thereof. (§ 1245.060, subd. (b).) None of these issues may be determined before the entry has been completed, nor can there be any discovery of matters relevant to these issues until the completion of the entry.

In their brief to this court after remand, the owners recognize that their discovery rights are related to the issues to be tried, not to the issues prior to entry. They claim, "nothing in the Supreme Court's decision condones, expressly or impliedly, a rule that would deprive Landowners of the right to conduct discovery *prior to going to trial*. The Landowners will obviously need to conduct expert discovery *with respect to valuation issues* and percipient discovery with respect to non-expert *issues affecting the value of the taking*." (Italics added.)

The trial court itself is in the best position to determine whether the petition has set forth sufficient facts to allow it to make the necessary determinations, and to require more information if necessary. The property owner may have information relevant to this inquiry, and may suggest that the trial court obtain information from the government that is not in the petition, but I see no purpose to be served by allowing formal discovery at this stage of the proceeding, other than to delay the entry.

4

Second, the Supreme Court has emphasized the "expedited" nature of the precondemnation proceeding. (*Property Reserve Inc. v. Superior Court* (2016) 1 Cal.5th 151, 192, 198.) Discovery should be had only *after* the testing has been completed and before a jury trial is commenced, if one becomes necessary. The trial court recognized the need for a speedy resolution and the potential for unwarranted delay when it told counsel for the owners, "You could just come up with 500 questions that would swamp them forever, and it would produce no useful information. We all know that." Certainly, the time necessary to allow the parties to depose witnesses, propound interrogatories, inspect documents, request admissions, and exchange expert trial witness information would cause significant delay of the entry, and is inconsistent with a procedure described as "expedited" by the Supreme Court. (*Ibid*.)

Given the amount of information produced in this case prior to the entry, allowing the parties to conduct formal discovery before the entry would serve no useful purpose and cause unnecessary delay. The most expeditious methods for the court to determine the facts prior to making its determinations regarding the purpose for the entry, the nature and scope of the activities that are reasonably necessary to accomplish such purpose, and the probable amount of compensation to be paid to the owner for actual damage to the property and interference with its possession and use, are the methods the trial court employed here. The government supported its petition with declarations, the owners offered declarations and arguments at the hearings detailing the additional information they needed, and the trial court questioned the parties regarding the particulars of the testing and the landowners' needs at the hearings.

Third, special proceedings are creatures of statute, and the statutory procedure must be strictly followed. (*People v. Quiroz* (2016) 244 Cal.App.4th 1372, 1379.) The precondemnation statute provides that a precondemnation proceeding is commenced by a petition filed by the government. (§ 1245.030.) It is for the court to determine the purpose for the entry, the nature and scope of the activities that are reasonably necessary

5

to accomplish such purpose, and the probable amount of compensation to be paid to the owner for actual damage to the property and interference with its possession and use. (§ 1245.030, subd. (b).)  The statute does not specify that the parties may conduct discovery on these preliminary issues that are to be determined by the trial court.

For all of these reasons, the trial court's denial of discovery prior to entry and testing should be affirmed.


_____/s/_____
Blease, Acting P. J.


6