Filed 12/20/23  Francis Parker School v. O'Brien CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| FRANCIS PARKER SCHOOL, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MICHAEL O'BRIEN et al., <br><br> Defendants and Appellants. | D081291 <br><br><br> (Super. Ct. No. 37-2020-00043797-CU-BC-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel and Eddie C. Sturgeon, Judges.  Affirmed.

Law Offices of David J. Gittelman and David J. Gittelman; Law Offices of Mary A. Lehman and Mary A. Lehman for Defendants and Appellants.

Littler Mendelson and Mattheus E. Stephens for Plaintiff and Respondent.

Michael and Julie O'Brien[1] appeal the summary judgment Francis Parker School (the School) obtained against them for withdrawing their children from the School and refusing to pay the balance of tuition for the academic year after the entire amount of tuition had become due, payable, and nonrefundable. The O'Briens contend: (1) the provisions of the contract requiring them to pay the full amount of tuition for the academic year constitute an invalid provision for liquidated damages; (2) the superior court erroneously ruled the School had no obligation to mitigate damages; and (3) the court erroneously denied their motions to compel further responses to written discovery requests concerning the School's efforts to mitigate damages. We reject the O'Briens' contentions and affirm the judgment.

## I.

## BACKGROUND

### A. *Enrollment and Withdrawal*

The O'Briens enrolled their four children in the School for the academic year from September 3, 2019, to June 12, 2020, on February 11, 2019. They did so by accessing the Web site of a third party (Tuition Aid Data Services) the School uses to provide a platform for enrollment of students, payment of tuition, and purchase of a tuition refund plan for students who withdraw. The following language appeared under the heading "**School Terms and Conditions**": "By signing below, the person(s) completing this Tuition Agreement, expressly acknowledge and agree that you (we) are responsible for the full amount of tuition and the timely payment of tuition when Your student is accepted for enrollment, pursuant to the following terms and conditions:

---

[1] The complaint identifies the defendants as Michael and Julie O'Brien. In their answer, the O'Briens assert "Michael" is erroneous and should be "Mike."

"1.    •The entire amount of tuition is due and payable on or before Friday, June 14, 2019, unless you withdraw your student before Friday, June 14, 2019. **In the event the student withdraws on or after June 14, 2019, tuition is NONREFUNDABLE.**

"2.    •Tuition payments will not be refunded or discharged in the event of an unpaid obligation if Your student is absent, withdraws, or is dismissed for any reason at any time.

"3.    •[The School] is at no time required to offset its damages due to withdrawal by enrolling another student, nor is it obligated to mitigate its damages due to withdrawal or separation, in the event Your student withdraws or is otherwise separated from [the School].

"4.    •In the unlikely event that tuition is not paid, or only paid in part, [the School] will exercise its right to collection to the fullest extent of the law, including but not limited to, sending the account to a collection agent of [the School's] choice and/or legal action."

The O'Briens electronically signed the Tuition Agreement.

The O'Briens chose to pay the tuition in installments. That choice obligated them to purchase a tuition refund plan from another third party (A.W.G. Dewar, Inc.), which was offered "[i]n consideration of [the] unconditional obligation to pay the entire amount of tuition when [a] student is accepted for enrollment," and would allow them to recover 75 percent of the unused tuition if the children withdrew from the School for certain reasons. The Tuition Agreement included an itemization of the tuition, transportation fee, and tuition refund plan premium for each child, which totaled $117,532.52.

3

On August 30, 2019, the O'Briens withdrew their children from the School. By that time, they had made installment payments totaling $29,689, and, with interest and other charges, owed an additional $98,329.24. The O'Briens made no further payments.

B.  *Litigation*

    1.  *Pleadings*

The School filed a complaint against the O'Briens in the superior court to recover the unpaid portion of the tuition for the 2019–2020 academic year. It asserted counts for breach of contract and two common counts (open book account and account stated).

The O'Briens filed an answer in which they asserted a general denial and 22 affirmative defenses. The fourth affirmative defense was that the School was barred from recovery because it had failed to make any attempt to mitigate damages. The eighth affirmative defense was that the School's recovery had to be reduced by any monies paid by students who filled the vacancies created by the withdrawal of the O'Briens' children. No defense challenged any specific term of the tuition agreement as unenforceable.

    2.  *Discovery*

The O'Briens served the School with special interrogatories, demands for production of documents, and requests for admissions seeking information on admissions standards, student withdrawals, waiting lists, and efforts to fill the vacancies created by the withdrawal of their children before the 2019–2020 academic year began. The School objected to the written discovery requests on the grounds, among others, that the requests sought information that was neither relevant nor likely to lead to the discovery of admissible evidence and the disclosure of which would violate the privacy rights of third parties. With exceptions for information or documents concerning the

4

O'Briens' children, the School provided no substantive responses to the interrogatories and produced no documents, admitted some requests for admissions, and denied others.

The O'Briens filed motions to compel further responses to their written discovery requests. They argued the information they sought regarding the School's admissions and waiting lists was relevant to mitigation of damages, and its disclosure would not violate anyone's right to privacy. The School opposed the motions on the grounds it had no duty to mitigate damages and thus discovery on that issue was inappropriate, and disclosure of information about persons admitted or on a waiting list would violate their privacy rights.

The superior court held a hearing and denied the O'Briens' motions. The court ruled "discovery related to mitigation [of damages] is irrelevant or unlikely to lead to the discovery of admissible evidence given that the Tuition Agreement states: '[The School] is at no time required to offset its damages due to withdrawal by enrolling another student, nor is [i]t obligated to mitigate its damages due to withdrawal or separation, in the event Your student withdraws or is otherwise separated from [the School].' "

3. *Summary Judgment*

The School filed a motion for summary judgment or, in the alternative, for summary adjudication. (Code Civ. Proc., § 437c.) It argued there was no dispute the O'Briens withdrew their children after the full amount of tuition had become due, payable, and nonrefundable and did not pay the full amount. The School further agued the O'Briens had asserted no recognized defense to its claims. In support of the motion, the School submitted a declaration from the Head of School, who described in general the School's planning, budgeting, and enrollment process, and in particular the O'Briens' enrollment and withdrawal of their children for the 2019–2020 academic year

5

without paying the full amount of tuition, and authenticated the Tuition Agreement and other documents. The School also submitted a declaration from its counsel, who attached the Tuition Agreement, discovery responses, documents produced in discovery, and other documents.

The O'Briens opposed the motion on several grounds. They argued: (1) the School failed to prove the existence of a contract, because the School did not sign the Tuition Agreement; (2) any portion of the tuition they did not pay was covered by the tuition refund plan they had purchased; (3) they could rescind the Tuition Agreement based on unilateral mistake, because they did not understand they would have to pay the full amount of tuition even if they withdrew their children; (4) the School interfered with the tuition refund plan by refusing to allow their children to attend the School for 14 days as required by the plan; (5) the School filled one of the vacancies created by the withdrawal of the children, and there were triable questions of fact on whether the School took reasonable steps to mitigate damages by trying to fill the others; and (6) the School could not satisfy the elements of its common counts. With their opposition, the O'Briens submitted declarations from themselves describing their enrollment and withdrawal of the children from the School and various communications they had with the School, and authenticating the Tuition Agreement, e-mail communications with the School, and other documents. The O'Briens' counsel submitted a declaration authenticating and attaching discovery-related documents.

The superior court held a hearing and granted the motion for summary judgment. The court ruled the School had proved the existence of a contract (the Tuition Agreement the O'Briens signed), its performance of the contract (by planning the academic year with the enrolled students in mind), the O'Briens' breach of the contract (by refusing to pay the full amount of tuition

6

after it became due, payable, and nonrefundable), and resulting damages ($98,329.24 in unpaid tuition). The court rejected the arguments the O'Briens made in their opposition papers, including the argument about mitigation of damages. As to that argument, the court noted the O'Briens had provided no authority the duty to mitigate could not be waived and no evidence the provision relieving the School of that duty was unconscionable. The court further ruled the School's evidence establishing the elements of the count for breach of contract also established the elements of the common counts.

The superior court later entered a judgment against the O'Briens for $98,329.24. From that judgment, they appealed. (Code Civ. Proc., §§ 437c, subd. (m)(1), 904.1, subd. (a)(1).)

## II.

## DISCUSSION

The O'Briens contend the superior court erred by granting the School's motion for summary judgment. They argue the provisions of the Tuition Agreement requiring payment of full tuition, disallowing refunds, and relieving the School of any obligation to mitigate damages, even though they withdrew their children before the academic year started, amount to an unenforceable liquidated damages clause. The O'Briens alternatively argue that if the challenged provisions do not amount to an unenforceable liquidated damages clause, the superior court erred in ruling the School could contract out of its legal obligation to mitigate damages. They finally argue the court erroneously denied them discovery into the School's actual damages and its efforts to mitigate damages. The O'Briens ask us to reverse the summary judgment and to remand the matter to the superior court with directions to allow them "to litigate the validity of the damages provisions of

7

the Tuition Agreement and to allow discovery into [the School's] actual damages, including whether and how [the School] exercised its duty to mitigate."

A.      *Order Granting Motion for Summary Judgment*

We first consider the O'Briens' challenge to the superior court's order granting the School's motion for summary judgment. Such a motion is properly granted when there is no triable issue of material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the order de novo. (*Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 388–389; *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1195.) We must determine whether the School met its initial burden to prove each element of its cause of action. (Code Civ. Proc., § 437c, subd. (p)(1); *Meda v. Autozone, Inc.* (2022) 81 Cal.App.5th 366, 374; *Paramount Petroleum Corp. v. Superior Court* (2014) 227 Cal.App.4th 226, 241.) If the School met its burden, we then must determine whether the O'Briens met their burden to submit evidence establishing a triable issue of material fact as to an element of the cause of action or a defense thereto. (Code Civ. Proc., § 437c, subd. (p)(1); *Meda*, at p. 374; *Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1091–1092.) In making these determinations, we liberally construe the evidence in favor of the O'Briens as the parties opposing the motion and resolve all doubts about the evidence in their favor. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39; *Dore*, at p. 389; *J.P. Morgan Trust Co. of Delaware v. Franchise Tax Bd.* (2022) 79 Cal.App.5th 245, 262.)

The School met its initial burden on the motion. To establish the count for breach of contract, the School had to prove: (1) existence of a contract; (2) performance by the School; (3) nonperformance by the O'Briens; and (4) harm

8

resulting from the nonperformance. (*Aton Center, Inc. v. United Healthcare Ins. Co.* (2023) 93 Cal.App.5th 1214, 1230; *CSAA Ins. Exchange v. Hodroj* (2021) 72 Cal.App.5th 272, 276.) The School did so by submitting the Tuition Agreement the O'Briens signed and the declaration of the Head of School, who authenticated the Tuition Agreement; stated the School had reserved spaces for the O'Briens' children for the 2019–2020 academic year and budgeted and planned in consideration of their enrollment for the year; asserted the O'Briens withdrew the children after the full amount of tuition had become due, payable, and nonrefundable without paying that amount; and identified the balance due. This evidence also sufficed to establish a prima facie case for the common counts, which merely restated the count for breach of contract. (See *Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460 [common count elements are statement of indebtedness in certain sum, consideration, and nonpayment]; *Rains v. Arnett* (1961) 189 Cal.App.2d 337, 344 [common count available when defendant prevents full performance by plaintiff or repudiates contract].)

The burden then shifted to the O'Briens to "set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(1).) In the superior court, they tried to meet this burden by showing that no contract existed, because the School did not sign the Tuition Agreement; that they could rescind the contract, because they were mistaken about their obligation to pay the full amount of tuition if they withdrew their children after the stated deadline; that the tuition refund plan would have paid the remaining balance had the School not prevented it from taking effect; and that the School could not recover the full amount of tuition, because it had filled one of the vacancies created by the withdrawal of their children and could have further

9

mitigated damages by filling the others. (See pt. I.B.3., *ante*.) Except for the mitigation argument, which we discuss below, on appeal the O'Briens have not renewed any of these arguments. We therefore deem the other arguments abandoned and do not address them. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4; *Joshi v. Fitness Internat., LLC* (2022) 80 Cal.App.5th 814, 826.)

The primary argument the O'Briens urge on appeal is a new one. They claim the provisions of the Tuition Agreement making the full amount of tuition for the 2019–2020 academic year due and payable by June 14, 2019, and nonrefundable if their children withdrew on or after that date and relieving the School of any obligation to mitigate damages together constitute an unenforceable liquidated damages clause. Citing Civil Code section 1671,[2] the O'Briens argue the Tuition Agreement is a "consumer contract" in which such a clause is presumptively void. (See, e.g., *Cell Phone Termination Fee Cases* (2011) 193 Cal.App.4th 298, 322.) The School responds that the O'Briens forfeited this argument by not making it in the superior court. The School is correct.

We generally do not permit a party to raise a theory for the first time on appeal from a summary judgment, because to do so would be unfair to the

_____

[2]    As relevant to the O'Briens' argument, the statute provides: "The validity of a liquidated damages provision shall be determined under subdivision (d) . . . where the liquidated damages are sought to be recovered from . . . [a] party to a contract for the retail purchase, or rental, by such party of personal property or services, primarily for the party's personal, family, or household purposes." (Civ. Code, § 1671, subd. (c)(1).) Under subdivision (d), a "provision in [such] a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

10

other party, which had no opportunity to respond to the theory, and to the superior court, which had no opportunity to consider it. (E.g., *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698; *Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 872–873; *American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281.) Although the O'Briens asserted in their answer defenses regarding mitigation of damages and argued in opposition to the summary judgment motion that the School had a duty to mitigate, nowhere in the answer or in the opposition did they cite Civil Code section 1671 or assert the Tuition Agreement contained an unenforceable liquidated damages clause. The O'Briens correctly assert in their reply brief that we may consider a new theory that presents a pure question of law on undisputed facts. (*Ryan v. Real Estate of the Pacific, Inc.* (2019) 32 Cal.App.5th 637, 644; *Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 259.) But as the O'Briens also correctly assert in their opening and reply briefs, the validity of a liquidated damages clause involves questions of fact specific to the particular contract at issue. (*Rice v. Schmid* (1941) 18 Cal.2d 382, 385; *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1383, 1394.) "[P]ossible theories that were not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal." (*American Continental Ins. Co.*, at p. 1281.) We conclude the O'Briens' forfeited the argument based on section 1671. (*Meridian Financial Services, Inc.*, at p. 700.)

The O'Briens alternatively argue the superior court erred by ruling that under the terms of the Tuition Agreement the School had no obligation to mitigate damages. They rely on the general common law rule that a party injured by a breach of contract must take reasonable steps to mitigate its losses and cannot recover for losses it could have avoided had it done so.

(*Agam v. Gavra* (2015) 236 Cal.App.4th 91, 111; *Valle de Oro Bank v. Gamboa* (1994) 26 Cal.App.4th 1686, 1691.)  The O'Briens say they could find no California case holding the duty to mitigate can be waived by contract, and they contend the School had to attempt mitigation because to do so would not have required the sacrifice and surrender of important and valuable rights.  We reject this alternative argument.

"A bedrock principle of contract law in California has always been that competent parties should have ' " 'the utmost liberty of contract' " ' to arrange their affairs according to their own judgment so long as they do not contravene positive law or public policy." (*Series AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217 Cal.App.4th 156, 164; see *South-Western Pub. Co. v. Simons* (9th Cir. 1981) 651 F.2d 653, 657 ["Parties are entitled to contract for anything that is not illegal."].)  In particular, a party may by contract waive a right, benefit, or advantage unless prohibited from doing so by statute.  (Civ. Code, § 3513; *Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 585.)  The Tuition Agreement explicitly relieved the School of any obligation "to offset" or "to mitigate" damages caused by the withdrawal of the O'Briens' children after the full amount of tuition had become due, payable, and nonrefundable.  That provision is presumptively fair, regular, and legal.  (Civ. Code, §§ 3545, 3548; *Wooton v. Coerber* (1963) 213 Cal.App.2d 142, 145.)  It was the O'Briens' burden to prove it was not. (*Hamilton v. Abadjian* (1947) 30 Cal.2d 49, 53; *Fellom v. Adams* (1969) 274 Cal.App.2d 855, 863.)  As the superior court noted in its order granting the School's summary judgment motion:  "The problem is that the O'Briens provided no authority that . . . mitigation cannot be waived."  They have not solved that problem on appeal.

Another problem with the O'Briens' alternative argument is that "[n]o case has been called to our attention wherein this rule as to the duty to minimize the damages has been applied to a situation in which the defendant's breach of duty consisted solely of the failure or refusal to pay a liquidated sum of money when due, and it may perhaps be doubted that the rule is applicable to such a case." (*Vitagraph, Inc. v. Liberty Theaters Co.* (1925) 197 Cal. 694, 698–699.) Casting further doubt on the applicability of the rule are decisions of this and other Courts of Appeal that when a parent enrolls a student in a private school for a specified term, agrees to pay tuition by a certain date without reduction if the student does not complete the term, and the student separates from the school after that date, the parent is liable for payment of the full amount of tuition for the term. (*Stewart v. Claudius* (1937) 19 Cal.App.2d 349, 354–355 (*Stewart*) [school entitled to full amount of tuition, even though student was dismissed for violating school rule, when contract required full payment and disallowed refund]; *Hoadley v. Allen* (1930) 108 Cal.App. 468, 471–472 (*Hoadley*) [same]; *Hitchcock Military Academy v. Myers* (1926) 76 Cal.App. 473, 476–478 (*Hitchcock*) [same when student withdrew].) Each case endorsed the rule that a contract for a course of instruction for a specified term is "entire," and a school is entitled to recover the agreed contract price whether or not a student completes the term. (*Stewart*, at p. 355; *Hoadley*, at p. 472; *Hitchcock*, at p. 476.)

The O'Briens try to avoid the cases cited in the previous paragraph by pointing out certain factual differences between those cases and theirs. For example, they note that in *Stewart, supra*, 19 Cal.App.2d 349, and *Hoadley, supra*, 108 Cal.App. 468, the students were dismissed for violating school rules, but the O'Briens withdrew their children. As noted above, however, *Hitchcock, supra*, 76 Cal.App. 473, applied the rule requiring full payment of

13

tuition when a mother voluntarily withdrew her children from the school. The O'Briens say the "two prerequisites" of *Hitchcock*, namely, that the student withdrew without any fault on the part of the school and that the resultant vacancy could not reasonably be filled, are not satisfied, because they "withdrew their children due to the school's fault in not addressing [their] valid concerns" and the School could have filled the vacancies. Even if we assume those are "prerequisites" to application of the rule requiring full payment of tuition, they do not prevent application here. The first prerequisite pertains to a withdrawal " 'during the term of the contract' "(*Hitchcock*, at p. 477), not to a withdrawal, like that of the O'Briens' children, before the term began. The second is satisfied. The Head of School stated that by the time the O'Briens withdrew their children (i.e., one business day before the start of the academic year), there was no active waiting list because students had enrolled in other schools and their families had assumed tuition obligations to those schools. The distinctions drawn by the O'Briens thus do not render the rule of *Stewart*, *Hoadley*, and *Hitchcock* inapplicable. Rather, because the terms of the Tuition Agreement are substantially the same as the terms of the contracts in those cases, the rule of those cases requiring full payment of tuition applies to this case. (See Civ. Code, § 3511 ["Where the reason is the same, the rule should be the same."].)

The O'Briens also disparage *Stewart*, *supra*, 19 Cal.App.2d 349, *Hoadley*, *supra*, 108 Cal.App. 468, and *Hitchcock, supra*, 76 Cal.App. 473, as "antiquated," but they acknowledge the cases have not been overruled or disapproved. In fact, an appellate court in another state more recently cited all three cases in support of the following holding: "Under a contract whereby an educational institution agrees to provide instruction for a specified period and a parent of a student agrees to pay a definite sum for

14

tuition and similar charges in consideration therefor, . . . where the contract expressly provides that no deduction or refund will be made, the entire tuition is payable despite the fact that the student withdraws from school. *In these circumstances, the educational institution has no duty to mitigate damages.*" (*Princeton Montessori Soc. v. Leff* (N.J.App.Div. 1991) 591 A.2d 685, 687, italics added (*Princeton Montessori*); see *Waterfront Montessori, LLC v. Xu* (N.J.App.Div., Apr. 11, 2019, No. A-3388-17T3) 2019 WL 1567807, at p. *2 [declining to overrule *Princeton Montessori*]; *Barrie School v. Patch* (Md. 2007) 933 A.2d 384, 393 ["Courts around the country have addressed similar fact patterns and many have held that there is no duty to mitigate damages under these circumstances."].) Under that holding, with which we agree, the School had no obligation to mitigate damages when the O'Briens withdrew their children after the date full tuition had become due, payable, and nonrefundable.

In sum, the Tuition Agreement "allocated to [the O'Briens] the risk that [their children] would not attend. Since the terms of the contract are clear and unambiguous, we are bound to enforce it as written." (*Princeton Montessori*, *supra*, 591 A.2d at p. 690; see *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 ["If contractual language is clear and explicit, it governs."].) We thus reject the O'Briens' argument the School had an obligation to mitigate its damages.

B.     *Order Denying Motions to Compel Further Discovery Responses*

We next consider the O'Briens' challenge to the superior court's order denying their motions to compel further discovery responses from the School. A discovery order may be reviewed on appeal from the judgment (Code Civ. Proc., § 906; *Deck v. Developers Investment Co., Inc.* (2023) 89 Cal.App.5th 808, 825), but the judgment will not be reversed based on an erroneous order

15

unless the error "resulted in a miscarriage of justice" (Cal. Const., art. VI, § 13; see *People v. Landau* (2013) 214 Cal.App.4th 1, 24; *County of Nevada v. Kinicki* (1980) 106 Cal.App.3d 357, 363). The O'Briens complain the court erroneously deprived them of discovery into the School's mitigation of damages after they withdrew their children before the academic year started. As we have explained, however, under the express terms of the Tuition Agreement the School had no obligation to mitigate, and the O'Briens were liable for the full amount of tuition for the year. The information they sought therefore would not have supported a defense to the School's claim and allowed them to defeat the motion for summary judgment. Since the O'Briens have "not show[n] how they would have received a more favorable outcome in this litigation had the trial court allowed them to conduct their requested discovery," no miscarriage of justice requires reversal. (*Property Reserve, Inc. v. Superior Court* (2016) 6 Cal.App.5th 1007, 1020.)

## III.

## DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

KELETY, J.