Filed 4/13/23  Shinshuri v. Cal. Physicians' Service CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| TAMMÉ SHINSHURI, | C091101 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2018-00230569-CU-WT-GDS) |
| v. | |
| CALIFORNIA PHYSICIANS' SERVICE, | |
| Defendant and Respondent. | |

Plaintiff Tammé Shinshuri, proceeding as a self-represented litigant, brought this wrongful termination action against her former employer, defendant California Physicians' Service doing business as Blue Shield of California (Blue Shield), alleging race discrimination and other claims after she was terminated for violating Blue Shield's code of conduct (conflict of interest policy) and engaging in behavior that created a negative impact on the workplace.  Shinshuri's termination arose out of her decision to engage in outside business activities without notifying Blue Shield and her refusal to perform her job responsibilities.  Shinshuri appeals from the judgment entered after the

1

trial court granted summary judgment in favor of Blue Shield. Finding no basis for reversal, we shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize only the underlying facts and procedural history necessary to the resolution of this appeal.

*Factual Background*

Blue Shield is a non-profit health plan. In November 2010, Blue Shield hired Shinshuri, an African-American female, as a senior instructional designer in the company's performance and learning organization, which developed solutions for employee training and skill development. Senior instructional designers were responsible for analyzing employee training and performance needs, training customer care employees and vendor representatives, and developing procedures and techniques to improve training and operational effectiveness within Blue Shield.

As a condition of employment, Shinshuri agreed to comply with certain policies, including those set forth in Blue Shield's code of conduct. Of relevance here, Shinshuri agreed to act in the best interest of Blue Shield and to disclose any outside business activities that could reasonably cause an actual or perceived conflict of interest. Shinshuri also agreed to ensure that any outside business activities did not impact her job responsibilities or her duty to act in Blue Shield's best interest, and not to solicit charitable donations from other Blue Shield employees during regular business hours.

At all relevant times, Shinshuri was aware that, pursuant to Blue Shield's code of conduct, she was required to promptly disclose any actual or perceived conflict of interest and to obtain approval from her manager and the corporate compliance department before taking employment outside of the company or serving on a board of directors of another organization. Shinshuri was also aware that her failure to comply with the code of conduct could result in her termination.

2

In 2014, Shinshuri created the Shinshuri Foundation, a "social purpose organization," with for-profit and non-profit components. The foundation was comprised of several subsidiary entities--e.g., Oracles of Truth (a non-profit education company) and Pedageo Media (a for-profit consulting company). Shinshuri was the chief executive officer and director of the foundation. Shinshuri did not disclose to Blue Shield that she created or worked at the foundation. Nor did she obtain approval from Blue Shield to serve on the foundation's board of directors.[1]

In 2015, Shinshuri began soliciting Blue Shield employees to work for and make charitable donations to the Shinshuri Foundation.

In January 2016, Shinshuri met with her supervisor, Jeffery Hopp. Multiple employees in the performance and learning organization had raised concerns about Shinshuri working on non-Blue Shield related "items" during regular business hours, soliciting donations for her "external non-profit," and recruiting employees to assist her with her outside business activities. During this meeting, Hopp informed Shinshuri that other employees felt that her work on her non-profit was impacting the workplace and team environment.

In March 2016, Hopp warned Shinshuri in writing that future disruptive actions to the team environment could result in corrective action.

In April 2016, Blue Shield implemented certain job-leveling changes (e.g., updated job duties and responsibilities) for employees throughout the performance and learning organization. As part of these changes, Shinshuri was required to partner with, mentor, and coach other instructional designers. Shinshuri refused to do so, explaining

---

[1] At the time Shinshuri was hired by Blue Shield, she did not own and was not affiliated with any entities other than Pedageo Media and Oracles of Truth. Prior to accepting employment with Blue Shield, Shinshuri marketed herself as a consultant through Pedageo Media.

that it would require her to mentor and coach Blue Shield employees with a proprietary cognitive methodology that she used as part of her outside business activities, and that she wanted to protect against the disclosure of intellectual property held by the Shinshuri Foundation.[2] Shinshuri insisted that if Blue Shield wanted her to mentor and coach other employees, it would have to enroll those employees in (and pay for) classes offered by the foundation. Shortly thereafter, Shinshuri applied for the position of lead instructional designer. She interviewed but was not hired. After Blue Shield hired an external candidate, Tim Ruggerio (a white male), Shinshuri refused to meet with him in person.

In October 2016, Shinshuri contacted human resources to discuss some concerns she had about Hopp. The following week, Shinshuri met with her "next level" manager, Lisa Nunes. During this meeting, Shinshuri complained that Hopp had "harassed [her by] falsely rating her competency" and was attempting to "get [her] to mentor and coach peers," which would put her "at risk of intellectual property infringement." According to Shinshuri, she and Nunes "discussed all of her issues," including discrimination, harassment, and hostility in the work environment. When Nunes advised Shinshuri that she should follow "similar methodologies" as those employed by her fellow instructional designers, Shinshuri stated that it was unreasonable to ask her to stop using her proprietary cognitive methodology.

In early November 2016, Blue Shield initiated a compliance investigation after learning that Shinshuri had failed to submit a conflict-of-interest form disclosing her involvement with the Shinshuri Foundation. The purpose of the investigation was to

---

[2] Shinshuri claimed to have developed "an advanced cognitive process" called "Manage the Gap (Mental Agility) method," and that the Shinshuri Foundation "owned" the intellectual property right in that method. Shinshuri described the method as a proprietary (but not copyrighted or patented) way of rapidly thinking and processing information innately to produce a creative solution, which she marketed and sold through Pedageo Media.

4

determine whether Shinshuri's employment with the foundation posed an actual or potential conflict of interest under Blue Shield's code of conduct, and whether Shinshuri violated the code of conduct.

In mid-November 2016, Shinshuri submitted a written complaint to human resources, alleging that Hopp had subjected her to "discriminatory behaviors, professional harassment, biased competency and performance ratings, and frequent requests to access and use intellectual capital and proprietary information/property for the purpose of mentoring, coaching, and sharing with peer employees resulting in an unpleasant and hostile work environment." Shinshuri's complaint did not specifically allege race or gender discrimination, but instead complained that Hopp had consistently rated her performance below the level she deserved, and repeatedly requested that she violate intellectual property law by training, mentoring, and coaching Blue Shield employees with her proprietary cognitive methodology. Following an investigation, Blue Shield determined that there was no direct or clear evidence to substantiate Shinshuri's allegations.

In early January 2017, the compliance investigation was completed. The investigation found as follows: (1) Shinshuri had " 'solicited and engaged in unwelcome . . . recruitment' of other Blue Shield employees in an attempt to benefit her own organization"; (2) Shinshuri's " 'recruitment and solicitation[] activities negatively impacted the team and [the] work environment by way of [(a)] workforce member complaints about the solicitation activities, (b) time consuming management investigations, and (c) damaged team coherence' "; (3) Shinshuri " 'engaged other workforce members seeking . . . donations' for her organization, as well as 'matching

funds' from Blue Shield";[3] and (4) " 'The Shinshuri Foundation [was] not a registered non-profit organization and [was] not a registered not for profit organization.' "  Based on these findings, the investigation concluded that Shinshuri had violated Blue Shield's code of conduct by "failing to self-disclose her involvement as founder and director of the Shinshuri Foundation," " providing inappropriate responses to her annual conflict of interest attestations," and "negatively impacting the work environment through her solicitation and recruitment activities."

Shortly thereafter, Blue Shield terminated Shinshuri due to her code of conduct violations, and because her behavior created a negative impact on the workplace. Shinshuri was terminated the day after she was informed that Blue Shield found the allegations in her human resources complaint unsubstantiated.

*Procedural Background*

In April 2018, Shinshuri, proceeding as a self-represented litigant, filed the underlying wrongful termination action against Blue Shield.  The operative complaint (the verified second amended complaint) was filed in early September 2018.  Three weeks later, Shinshuri filed a case management statement indicating that she would complete discovery and be ready for trial within 12 months from the filing of the original complaint (April 2019).

After the trial court sustained Blue Shield's unopposed demurrer to the operative complaint in November 2018, only five causes of action remained, all of which alleged a violation of the Fair Employment Housing Act (FEHA) (Gov. Code, § 12920 et seq.):  (1) race discrimination; (2) gender discrimination; (3) wrongful termination in violation of public policy; (4) aiding and abetting; and (5) failure to prevent discrimination and

---

[3]  Through one of its social responsibility initiatives, known as "Shield Cares," Blue Shield offers to match employee donations to California-based 501(c)(3) non-profit organizations that focus on health, human services, and/or environmental issues.

6

retaliation. The race discrimination claim was predicated on Shinshuri's contention that two other Blue Shield employees (white females) were allowed to recruit employees and solicit donations for outside business activities during regular business hours without being subject to any adverse employment action. The gender discrimination claim was based on Blue Shield denying Shinshuri a promotion in favor of Ruggiero--a less qualified and inexperienced white male. The wrongful termination in violation of public policy claim was predicated on Blue Shield terminating Shinshuri for filing a complaint with human resources about her supervisor (Hopp), and for refusing to collaborate with other employees because it would "cause her to violate intellectual property laws against her own businesses." The aiding and abetting claim was based on "pretextual allegations" of a conflict of interest made by Blue Shield supervisors, which resulted in Shinshuri's wrongful termination. The final claim was a derivative claim predicated on the failure of Blue Shield employees to take the necessary steps to prevent discrimination and retaliation against Shinshuri.

In January 2019, the trial court set the trial date in early November 2019. As a result, the deadline to complete discovery was in early October 2019. (See Code Civ. Proc., § 2024.020 [litigants must complete discovery at least 30 days before the date initially set for trial].)[4]

In early July 2019, Shinshuri served Blue Shield with her first set of discovery requests, form and special interrogatories. One week later, Blue Shield filed a motion for summary judgment, with a hearing date in early October 2019. In August 2019, Blue Shield responded to Shinshuri's discovery requests.

In early September 2019, Shinshuri filed a 700-page motion to compel further responses to her interrogatories. The trial court denied the motion two weeks later,

---

[4] Further undesignated statutory references are to the Code of Civil Procedure.

7

finding that Shinshuri failed to "engage in a serious, meaningful, and good faith attempt to meet and confer on the specific issues raised by the motion." In its ruling, the court explained that Shinshuri did not meet and confer with defense counsel regarding the substance of any of the challenged discovery responses, and refused multiple times to identify the specific discovery responses she wanted Blue Shield to supplement.[5] The court also denied Shinshuri's request to "dismiss" the summary judgment hearing, but advised she could seek to continue the hearing upon a showing of good cause under section 437c, subdivision (h).

In October 2019, the trial court issued a detailed written order denying Shinshuri's request for a continuance of the summary judgment hearing, sustaining Blue Shield's evidentiary objections, and granting summary judgment in favor of Blue Shield. In granting summary judgment, the court explained why such relief was warranted as to each of Shinshuri's causes of action, including why summary judgment was warranted on her discrimination claims under the three-part test articulated in *McDonnell Douglas Corp. v. Green* (1972) 411 U.S. 792.[6] Although the court sustained Blue Shield's evidentiary objections in their entirety, it noted that summary judgment would have been

---

[5] We note that the trial court also correctly rejected Shinshuri's contention that Blue Shield waived its objections to her interrogatories because its responses were unverified and therefore untimely. (See *Food 4 Less Supermarkets, Inc. v. Superior Court* (1995) 40 Cal.App.4th 651, 657-658.)

[6] Workplace discrimination claims under FEHA adhere to the *McDonnell Douglas* "three-stage burden-shifting test." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354; *Department of Corrections & Rehabilitation v. State Personnel Bd.* (2022) 74 Cal.App.5th 908, 923.) "Under the three-part test developed in *McDonnell Douglas . . .* '(1) The complainant must establish a prima facie case of discrimination; (2) the employer must offer a legitimate reason for his actions; (3) the complainant must prove that this reason was a pretext to mask an illegal motive.' " (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68; see also *Department of Corrections & Rehabilitation v. State Personnel Bd.*, *supra*, 74 Cal.App.5th at p. 924.)

proper even had it overruled the objections. In other words, the court found that Shinshuri failed to present evidence showing there was a triable issue of material fact. In denying Shinshuri's request for a continuance, the court explained: "[Shinshuri] . . . seeks an unspecified continuance to complete amorphous discovery and take depositions. This would require that the Court not only vacate the current trial date but also re-open discovery. The Court fails to see why [Shinshuri] could not have completed this discovery at an earlier time rather than waiting until the months before trial to begin discovery. Further, [Shinshuri's] declaration does not sufficiently illustrate what facts might exist that cannot be presented which would have had any effect on the [summary judgment] motion and/or why discovery was not sought earlier."

Shinshuri timely appealed. After multiple delays for record preparation and submission of appellant's briefing, the case was fully briefed on January 3, 2023, and assigned to this panel on January 31, 2023. The parties waived argument and the case was submitted on March 28, 2023.

## DISCUSSION

### I

### *Standard of Review*

On a motion for summary judgment, a defendant must show "that one or more elements of the cause action . . . cannot be established, or that there is a complete defense to the cause of action." (§ 437c, subd. (p)(2).) A defendant need only provide evidence showing that the plaintiff cannot prove his or her case. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853-855.)

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying

9

fact in favor of the party opposing summary judgment.  (*Aguilar v Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.)

We independently review the trial court's decision to grant a defendant's motion for summary judgment.  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) In doing so, "we apply the traditional three-step analysis used by the trial court, that is, we (1) identify the pleaded issues, (2) determine if the defense has negated an element of the plaintiff's case or established a complete defense, and if and only if so, (3) determine if the plaintiff has raised a triable issue of fact."  (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175.)  "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale."  (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.)

Our review is governed by a fundamental principle of appellate procedure, namely, that " '[a] judgment or order of the lower court is *presumed correct*,' " and thus, " 'error must be affirmatively shown.' "  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 see also *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)  Under this principle, plaintiff bears the burden of establishing error on appeal, even though defendant had the burden of proving its right to summary judgment before the trial court.  (*Frank and Freedus v. Allstate Ins. Co.* (1996) 45 Cal.App.4th 461, 474.)  For this reason, our review is limited to contentions adequately raised and supported in plaintiff's brief.  (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125-126.)  Reversal is only required where plaintiff demonstrates prejudicial error based on sufficient legal argument

supported by citation to the record.  (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557.)

II

*Forfeiture*

As a threshold matter, we conclude that Shinshuri has forfeited her claims of error due to the significant deficiencies in her appellate briefing.

A.  *Applicable Appellate Rules of Procedure*

The California Rules of Court prescribe basic rules for the format and content of appellate briefs.  As relevant here, the rules require an appellant in her opening brief to "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority."  (Cal. Rules of Court, rule 8.204(a)(1)(B).)[7]  An appellant's opening brief must also "[p]rovide a summary of the significant facts limited to matters in the record."  (Rule 8.204(a)(2)(C).)

"Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078.)  " '[O]ne cannot simply say the court erred, and leave it up to the appellate court to figure out why.' "  (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237.)  An appellant has the burden to establish error "by presenting legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited."  (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655; see *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 ["an appellant is required to not only cite to valid legal authority, but also explain how it applies in his

---

[7]  Further rule references are to the California Rules of Court.

case"].)  It is not an appellate court's responsibility to develop an appellant's arguments. (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1206, fn. 11.) Appellate courts may, and ordinarily do, "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287; see also *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

These rules of appellate procedure apply with equal force to a plaintiff who has chosen to represent herself on appeal, as Shinshuri has done here.  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)  The law affords self-represented litigants " 'the same, but no greater consideration than other litigants and attorneys.' "  (*Id*. at p. 1247.)

B.  *Analysis*

Shinshuri's brief does not provide a coherent summary of the material facts pertaining to her causes of action, and merely recites conclusory contentions of error unsupported by adequate legal and factual analysis explaining how and why the trial court erred.  While Shinshuri's brief includes citations to statutes and case law articulating general principles of law, it fails to present reasoned legal argument applying those principles to the facts of this case.  Shinshuri's undeveloped arguments, which fail to apply the relevant law in any meaningful way, amount to little more than a claim that the court was wrong and reversal is required.  For example, Shinshuri argues that the court erred in denying her motion to compel further responses to her first set of interrogatories, but her opening brief merely complains in a general manner that Blue Shield's responses were invalid because they were evasive or non-responsive.  She does not provide any legal analysis explaining why it was error for the court to deny the motion based on her failure to engage in a meaningful meet and confer process.

Similarly, Shinshuri argues the trial court abused its discretion in denying her motion for a continuance of the summary judgment hearing to conduct additional

12

discovery, but she fails to formulate a coherent argument, supported by pertinent legal authority, explaining how and why the court erred.  While Shinshuri's opening brief identifies the six factors trial courts may consider in granting a continuance (see *Chavez v. 24 Hour Fitness USA, Inc*. (2015) 238 Cal.App.4th 632, 644), she fails to discuss three of the factors.  The factors she does discuss are only analyzed in a cursory fashion, without reasoned legal argument as to why the factors supported a continuance.  Most notably, Shinshuri failed to explain why the evidence she sought through further discovery was essential to opposing the summary judgment motion.

Finally, with respect to summary judgment, Shinshuri's opening brief does not include any meaningful legal analysis explaining how and why the trial court erred.  Critically, Shinshuri's brief fails to specifically identify what triable issues of material fact exist as to her causes of action.  Nor does her brief establish any legal error that would justify reversal.  Indeed, Shinshuri failed to recite the relevant law pertaining to her causes of action and explain why summary judgment was improper based on the evidence she presented.  Instead, Shinshuri merely argues, without reasoned legal analysis and citation to authority, that the court's decision to sustain Blue Shield's evidentiary objections was a "pure violation of law."

In sum, given Shinshuri's inadequate appellate briefing, we conclude that she has forfeited her claims of error.[8]  But even if we were to consider the merits of the claims, we see no basis for reversal, as we next explain.

---

[8] Shinshuri's reply brief contains similar deficiencies as her opening brief.  And, for the first time, Shinshuri offers undeveloped arguments in her reply brief regarding the merits of the trial court's summary judgment ruling.  She argues, without any meaningful legal analysis, that summary judgment was improperly granted because "case law" and the "evidence" she presented supported each of her causes of action.  We decline to consider Shinshuri's conclusory and belated arguments.  Shinshuri has not provided good reason for not presenting them in her opening brief.  (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 [the general rule is that points raised for the first time in a reply brief will not be considered]; see also *Simpson v.*

III

*Motion to Compel Further Discovery Responses*

Shinshuri initially contends that it was a "pure violation of law" for the trial court to deny her motion to compel further responses to her first set of interrogatories. We see no error.

A. *Applicable Legal Principles*

The Civil Discovery Act (§ 2016.010 et seq.) " 'requires that, prior to the initiation of a motion to compel, the moving party declare that he or she has made a serious attempt to obtain "an informal resolution of each issue." [Citations.] This rule is designed "to encourage the parties to work out their differences informally so as to avoid the necessity for a formal order. . . ." [Citation.] This, in turn, will lessen the burden on the court and reduce the unnecessary expenditure of resources by litigants through promotion of informal, extrajudicial resolution of discovery disputes.' " (*Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1293.)[9] The law " 'requires that there be a serious effort at negotiation and informal resolution.' [Citation.] . . . '[A]rgument is not the same as informal negotiation' [citation]; . . . attempting informal resolution means more than the mere attempt by the discovery proponent 'to persuade the objector of the error of his ways' [citation]; and . . . '[a] reasonable and good faith attempt at informal resolution

---

*The Kroger Corp.* (2013) 219 Cal.App.4th 1352, 1370 [an appellate court "may decline to consider an argument raised for the first time in a reply brief if no good reason is demonstrated for the delay in raising the point"].) As our Supreme Court has explained, "Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant." (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.)

[9] "A motion [for an order compelling a further response to interrogatories] under subdivision (a) shall be accompanied by a meet and confer declaration under Section 2016.040." (§ 2030.300, subd. (b).) "A meet and confer declaration in support of a motion shall state facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion." (§ 2016.040.)

entails something more than bickering with [opposing] counsel . . . . Rather, . . . counsel [must] attempt to talk the matter over, compare their views, consult, and deliberate.' " (*Id*. at p. 1294.)

" ' "Management of discovery generally lies within the sound discretion of the trial court." [Citation.] "Where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court. [Citation.] The trial court's determination will be set aside only when it has been demonstrated that there was 'no legal justification' for the order granting or denying the discovery in question." ' " (*Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 740.) "The trial judge's application of discretion in discovery matters is presumed correct, and the complaining party must show how and why the court's action constitutes an abuse of discretion in light of the particular circumstances involved." (*Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 432.)

Further, where, as here, an appellant has not sought writ review of the discovery order, but instead seeks review on an appeal from the judgment following a successful summary judgment motion, the appellant must show "not only that the trial court erred, but also that the error was prejudicial; i.e., [the appellant] must show that it is reasonably probable the trial court would have denied summary judgment" had the court granted appellant's motion to compel. (*Lickter v. Lickter, supra,* 189 Cal.App.4th at p. 740.)

B. *Analysis*

We conclude Shinshuri has not carried her burden to demonstrate an abuse of discretion. As previously explained, Shinshuri's opening brief makes no attempt to explain why the trial court erred in finding that she failed to make a reasonable and good faith effort at an informal resolution of the issues presented by her motion to compel further discovery responses. And the record supports the court's determination that Shinshuri's motion was not preceded by a reasonable and good faith effort to informally resolve the discovery disputes. As the court correctly found, Shinshuri did not meet and

15

confer with defense counsel regarding the substance of any of the challenged discovery responses.[10]

Further, Shinshuri has not shown that it is reasonably probable the trial court would have denied Blue Shield's motion for summary judgment had it granted her motion to compel. " '[W]e cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice.' " (*Property Reserve, Inc. v. Superior Court* (2016) 6 Cal.App.5th 1007, 1020.)

IV

*Request for a Continuance*

Next, Shinshuri contends that it was a "pure violation of law" for the trial court to deny her request to continue the summary judgment hearing so she could "complete discovery." She claims that she needed additional time to contact "third-party witnesses" to obtain their testimony to "validate prior witness testimony" and to "authentic[ate] specific new evidence and defeat the MSJ." She argues a continuance was warranted because defense counsel failed to respond to her discovery requests in "good faith," as he did not produce the contact information for the witnesses she identified in her pleadings, discovery responses, and the interrogatories she propounded to Blue Shield.

A. *Applicable Legal Principles*

When a party opposing a motion for summary judgment has not had a sufficient opportunity to marshal evidence, subdivision (h) of section 437c provides an avenue for that party to obtain additional time to get evidence needed to oppose the motion: "If it

---

[10] We reject Shinshuri's suggestion that she was not required to comply with the meet and confer requirement. This case does not involve a failure to serve a timely response to interrogatories. (See *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2015) 148 Cal.App.4th 390, 404 [explaining that unlike a motion to compel *further* responses, a motion to compel responses when a party fails to serve a timely response is not subject to the meet and confer requirement].)

appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due." (§ 437c, subd. (h).)

A party seeking a continuance to oppose summary judgment " 'must show: (1) the facts to be obtained [through additional discovery] are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts." (*Frazee v. Seely* (2002) 95 Cal.App.4th 627, 633.) "[L]ack of diligence may be a ground for denying a request for a continuance of a summary judgment . . . hearing." (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 257.) "A good faith showing that further discovery is needed to oppose summary judgment requires some justification for why such discovery could not have been completed sooner." (*Ibid.*)

The decision whether to grant a continuance of the summary judgment hearing is within the discretion of the trial court. (*Frazee v. Seely*, *supra*, 95 Cal.App.4th at p. 633.) " ' "An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice." ' " (*Espejo v. The Copley Press, Inc*. (2017) 13 Cal.App.5th 329, 378.)

B. *Analysis*

We see no abuse of discretion. The record reflects that Shinshuri failed to demonstrate that a continuance of the summary judgment hearing was warranted. Shinshuri commenced this action in April 2018 and filed the operative complaint in early September 2018. Three weeks later, she filed a case management statement indicating

17

that she would complete discovery and be ready for trial by April 2019. In January 2019, the trial court set the trial date in early November 2019. As such, Shinshuri was required to complete discovery by no later than early October 2019. (See § 2024.020.) Shinshuri, however, did not serve her first set of discovery requests until July 2019, approximately three months before trial and one week before Blue Shield filed its summary judgment motion. In September 2019, Shinshuri filed her opposition to the summary judgment motion and submitted a declaration requesting a continuance of the hearing so she could conduct additional discovery. However, as the court pointed out, Shinshuri's declaration failed to articulate what specific facts she would obtain through additional discovery, why she believed those facts would have any impact on the pending motion for summary judgment, and why she could not have obtained the facts earlier. Instead, Shinshuri generally indicated that she needed further discovery to obtain evidence necessary to effectively oppose summary judgment. In denying Shinshuri's request for a continuance, the court correctly noted that Shinshuri sought "an unspecified continuance to complete amorphous discovery and take depositions." On the record before us, we cannot conclude that the decision to deny Shinshuri's request for a continuance was incorrect.

V

*Motion for Summary Judgment*

Finally, Shinshuri contends that it was a "pure violation of law and a miscarriage of justice" for the trial court to grant Blue Shield's motion for summary judgment. According to Shinshuri, the court's failure to weigh all her evidence and determine whether there were triable issues of fact was an "intentional abuse of discretion in violation of CCP § 437c(h)." In making this argument, Shinshuri claims that the court erred in sustaining Blue Shield's evidentiary objections, since it was required to "consider all evidence submitted by parties to determine triable issues of fact."

Shinshuri has not cited any authority supporting her contention that the trial court was *required* to consider all her evidence and determine if triable issues of material fact

18

existed. Indeed, a court ruling on a summary judgment motion "shall consider all of the evidence set forth in the papers, *except the evidence to which objections have been made and sustained*." (§ 437c, subd. (c), italics added; see *Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542-543 [a party may not raise a triable issue of material fact by relying on inadmissible evidence].)

Further, in order to demonstrate evidentiary error, an appellant must affirmatively challenge the trial court's evidentiary rulings with legal analysis and citation to authority. (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114.) As we have explained, Shinshuri has not done so. Shinshuri's opening brief does not include any meaningful legal analysis explaining how and why the court erred in sustaining any specific objection lodged by Blue Shield. Consequently, no further discussion of this issue is required. (*Ibid.* [an "issue merely raised by a party without any argument or authority is deemed to be without foundation and requires no discussion' "].)

In any event, the record reflects that, contrary to Shinshuri's contention, the trial court *did* consider the evidence she submitted in opposition to the summary judgment motion. The court specifically found that summary judgment would have been proper *even if it had overruled* Blue Shield's evidentiary objections. Shinshuri, for her part, has failed to establish that the court's alternative ruling was erroneous. She has not presented legal argument setting forth the applicable substantive law and pinpointing the specific evidence in the record indicating the existence of a triable issue of material fact. It is not our role to do so. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.)[11]

---

[11] We need not and do not address Shinshuri's contention that Blue Shield's counsel violated professional ethical rules. This issue was not raised below and has no bearing on the disposition of Shinshuri's appeal.

19

## DISPOSITION

The judgment is affirmed.  Blue Shield shall recover its costs on appeal.  (Rule 8.278(a).)

      /s/          

Duarte, J.

We concur:

   /s/        

Mauro, Acting P. J.

   /s/        

Boulware Eurie, J.