Filed 4/13/26 (unmodified opinion attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DEPARTMENT OF WATER RESOURCES CASES. | C103207 |
| | (JCCP 4594) |
| | (San Joaquin Super. Ct. Nos. STK-CV-UED-2023-0008476, STK-CV-UED-2024-0006729, STK-CV-UED-2024-0006894, STK-CV-UED-2024-0006737, STK-CV-UED-2024-0006722, STK-CV-UED-2024-0006782, STK-CV-UED-2024-0007321, STK-CV-UED-2024-0006905,STK-CV-UED-2024-000694, STK-CV-UED-2024-0006781, STK-CV-UED-2024-0006786, STK-CV-UED-2024-0006783, STK-CV-UED-2024-0006833, STKK-CV-UED-2024, STK-CV-UED-2024-0006836, STK-CV-UED-2024-0006838& STK-CV-UED-2024-0006900; Alameda Super. Ct. No. 24CV079864; Contra Costa Super. Ct. Nos. C24-01552 & C24-01489) |
| | ORDER DENYING PETITION FOR REHEARING AND MODIFYING OPINION |
| | [NO CHANGE IN JUDGMENT] |

THE COURT:

Appellants Coney Island Farms, Inc. et al. filed a petition for rehearing with this court.  It is hereby ordered that the petition for rehearing is denied.

It is also ordered that the opinion filed herein on March 26, 2026, be modified as follows:

1.      On page 18, footnote 4 reads, "This conclusion also disposes of landowners' argument that a classic condemnation action is required because the geotechnical and environmental activities constitute "*per se* physical takings" under *Cedar Point Nursery v. Hassid* (2021) 594 U.S. 139.  Even if these activities constitute physical takings, *Property Reserve I* establishes that the precondemnation entry statutes provide a constitutionally adequate procedure to enable landowners to obtain just compensation. (*Property Reserve I, supra*, 1 Cal.5th at pp. 186-187, 200-202, 211-212.)" and is replaced to read as follows:

> This conclusion also disposes of any argument that a classic condemnation action is required because the geotechnical and environmental activities constitute "*per se* physical takings" under *Cedar Point Nursery v. Hassid* (2021) 594 U.S. 139. Even if these activities constitute physical takings, *Property Reserve I* establishes that the precondemnation entry statutes provide a constitutionally adequate procedure to enable the property owner to obtain just compensation.  (*Property Reserve I, supra*, 1 Cal.5th at pp. 186-187, 200-202, 211-212.

                                              \s\
                                            Krause, J.

We concur:

    \s\
Renner, Acting P. J.

    \s\
Wiseman, J.[*]

---

[*]      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 3/26/26 (unmodified opinion)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DEPARTMENT OF WATER RESOURCES CASES | C103207<br><br>(JCCP 4594)<br><br>(San Joaquin Super. Ct. Nos. STK-CV-UED-2023-0008476, STK-CV-UED-2024-0006729, STK-CV-UED-2024-0006894, STK-CV-UED-2024-0006737, STK-CV-UED-2024-0006722, STK-CV-UED-2024-0006782, STK-CV-UED-2024-0007321, STK-CV-UED-2024-0006905,STK-CV-UED-2024-000694, STK-CV-UED-2024-0006781, STK-CV-UED-2024-0006786, STK-CV-UED-2024-0006783, STK-CV-UED-2024-0006833, STKK-CV-UED-2024, STK-CV-UED-2024-0006836, STK-CV-UED-2024-0006838& STK-CV-UED-2024-0006900; Alameda Super. Ct. No. 24CV079864; Contra Costa Super. Ct. Nos. C24-01552 & C24-01489) |

1

APPEAL from a judgment of the Superior Court of San Joaquin County, Lydia M. Villarreal, Judge.  Affirmed.

Nomellini, Grilli & McDaniel Law Office, Dante J. Nomellini, Jr., for Appellants.

Rob Bonta, Attorney General, Iveta Ovsepyan, Assistant Attorney General, Molly S. Murphy, and Michael C. Gasbarro, Deputy Attorneys General, for Respondent State of California, acting by and through the Department of Water Resources.

This appeal arises from a series of petitions the Department of Water Resources (DWR) has filed seeking access to properties to investigate their suitability for a potential water conveyance project.  DWR filed the petitions pursuant to Code of Civil Procedure[1] section 1245.010, et seq. (the precondemnation entry statutes), a statutory procedure by which "any person authorized to acquire property for a particular use by eminent domain" may obtain a court order to "enter upon property to make photographs, studies, surveys, examinations, tests, soundings, borings, samplings, or appraisals or to engage in similar activities reasonably related to acquisition."  (§ 1245.010.)

In a prior appeal in this proceeding, the California Supreme Court held that the precondemnation entry statutes are a constitutionally valid procedure by which a public entity with eminent domain powers may enter property to conduct precondemnation testing and examination, so long as the landowner may obtain a jury trial on the measure of damages.  (*Property Reserve, Inc. v. Superior Court* (2016) 1 Cal.5th 151, 167 (*Property Reserve I*).)  The California Supreme Court held that a "classic" condemnation action—commenced by the filing of a complaint under section 1250.110 et seq.—is not required for precondemnation entry and testing, even if such activities rise to the level of a taking or damaging of property under the state takings clause.  (*Property Reserve I,* at pp. 197-199.)

---

[1]     Undesignated section references are to the Code of Civil Procedure.

Notwithstanding *Property Reserve I*, appellant landowners contend that Water Code sections 250 and 11580 impose a special "timing limitation" (boldface & italics omitted) on DWR's exercise of its eminent domain powers, requiring DWR to have an "authorized and funded project" in place before DWR may "commence any such proceeding in eminent domain." (Wat. Code, § 250; see Wat. Code, § 11580.) We disagree. We conclude, as did our Supreme Court, that the precondemnation entry statutes provide a constitutionally valid procedure by which a public entity considering condemnation of property for a public project may enter the property and conduct investigatory testing and exploration necessary to determine whether the property is suitable for such purpose. (*Property Reserve I, supra*, 1 Cal.5th at pp. 167, 190, 198, 207, 212-213.) DWR need not commence a classic condemnation action, or comply with the "authorization and funding" requirements of Water Code sections 250 and 11580, before conducting precondemnation testing activities, irrespective of whether the activities will result in a taking or damaging of property. To conclude otherwise would be inimical to the purpose of the precondemnation entry and testing procedure, which is designed to "enable the public entity to determine whether or not the property is suitable and should be acquired for a public project." (*Property Reserve I,* at p. 197.) Accordingly, we affirm the trial court's entry order.

BACKGROUND LEGAL PRINCIPLES

A.     *Constitutional Takings Clause*

The federal takings clause, contained in the Fifth Amendment to the United States Constitution, provides: "[N]or shall private property be taken for public use, without just compensation." (U.S. Const., 5th Amend.) It applies to the states through the Fourteenth Amendment. (*Property Reserve I, supra,* 1 Cal.5th at p. 185.) The law imposes two conditions on a state's authority to confiscate private property—that the taking be for a " 'public use' " and that " 'just compensation' " be paid. (*Council of San Benito County Governments v. Hollister Inn, Inc.* (2012) 209 Cal.App.4th 473, 493 (*San Benito*).)

3

California's takings clause is found in article I, section 19 of the California Constitution.  It provides:  "Private property may be taken or damaged for a public use . . . only when just compensation, ascertained by a jury . . . , has first been paid to, or into court for, the owner.  The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation."  (Cal. Const., art. I, § 19, subd. (a).)

The California takings clause affords broader protection than its federal counterpart by (1) explicitly providing compensation for "damage" as well as a taking, (2) affording owners the right to a jury trial, and (3) requiring that the payment of compensation generally precede the taking or damaging of property.  (*Property Reserve I, supra*, 1 Cal.5th at pp. 187-188; see *NJD, Ltd. v. City of San Dimas* (2003) 110 Cal.App.4th 1428, 1434.)  Aside from these differences, the California Supreme Court has construed the state and federal clauses congruently.  (*Bottini v. City of San Diego* (2018) 27 Cal.App.5th 281, 311, review granted Dec. 19, 2018 (S252217), review dismissed as improvidently granted Apr. 10, 2019.)  Both the state and federal takings clause guarantee property owners "just compensation" when their private property is taken for public use.  (*Property Reserve I,* at p. 185; *Herzberg v. County of Plumas* (2005) 133 Cal.App.4th 1, 12.)

B.    *California's Eminent Domain Law*

"In 1975, as the culmination of a multiyear effort to update and reorganize California's eminent domain statutes into a comprehensive statutory scheme, the Legislature enacted a new, lengthy, and detailed Eminent Domain Law."  (*Property Reserve I, supra*, 1 Cal.5th at p. 183, citing Stats. 1975, ch. 1275, §§ 1–5, pp. 3409–3466.)  The Eminent Domain Law governs acquisitions by eminent domain except as otherwise specifically provided by statute.  (§ 1230.020.)  Thus, unless a different statute specifically overrides its provisions, the Eminent Domain Law governs the rules and

4

procedures for all eminent domain proceedings. (Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc. (Lexis Advance) foll. § 1230.020 (Cal. Law Revision Com.); *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 542 [explanatory comments by law revision commission are persuasive evidence of Legislature's intent].)

### 1. *A "Classic" Eminent Domain Proceeding*

To avoid confusion, we will follow the California Supreme Court's lead in referring to an eminent domain proceeding commenced by the filing of a complaint under section 1250.110 et seq. as a "classic" condemnation proceeding, and the judicial proceeding provided by the precondemnation entry statutes (discussed below) as a "precondemnation" proceeding. (See *Property Reserve I, supra*, 1 Cal.5th at p. 166.)

Under the Eminent Domain Law, a public entity may initiate a classic condemnation proceeding to acquire property for a "public use." (§ 1240.010.) This statutory requirement " 'reiterates the basic constitutional limitation that property may be acquired by eminent domain only for "public use." ' " (*San Benito, supra*, 209 Cal.App.4th at p. 483; Cal. Law Revision Com., *supra*, (Lexis Advance) foll. § 1240.010.) "Where the Legislature provides by statute that a use, purpose, object, or function is one for which the power of eminent domain may be exercised, such action is deemed to be a . . . public use." (§ 1240.010.)

Only persons authorized by statute may exercise the power of eminent domain to acquire property for a public use. (§ 1240.020; Cal. Law Revision Com., *supra*, (Lexis Advance) foll. § 1240.020; *San Bernardino County Flood Control Dist. v. Superior Court of San Bernardino County* (1969) 269 Cal.App.2d 514, 518; see also § 1240.110 [interests which may be acquired].) A statutory grant of the eminent domain power must be indicated either by express terms or by clear implication. (*Golden Gate Bridge, Highway and Transportation Dist. v. Muzzi* (1978) 83 Cal.App.3d 707, 712.) Although statutory language defining such power is strictly construed against the condemnor, a

statute granting the power of eminent domain also should be construed "to effectuate and not defeat the purpose for which it was enacted." (*Ibid.*)

A public entity may not commence an eminent domain proceeding to acquire property unless its governing body first adopts a "resolution of necessity" that meets the requirements of the Eminent Domain Law. (§§ 1240.040, 1245.220-1245.240; see §§ 1235.190, 1245.235.) Section 1245.230 prescribes the required contents of a resolution of necessity. (*San Benito, supra*, 209 Cal.App.4th at p. 484.) Among other things, the resolution must contain a declaration that the public entity has found and determined each of the following: (1) "[t]he public interest and necessity require the proposed project[;]" (2) "[t]he proposed project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury[; and] (3) "[t]he property described in the resolution is necessary for the proposed project." (*San Benito,* at pp. 484-485; *City of Stockton v. Marina Towers LLC* (2009) 171 Cal.App.4th 93, 108; § 1240.230, subd. (c); see § 1240.030.) After a resolution of necessity is adopted, the condemnor may file a complaint for eminent domain in the county in which the property is located.[2] (§§ 1250.020, 1250.110, 1250.310.)

Upon commencement of the eminent domain proceeding, the plaintiff may move the court for an order for pre-judgment possession, demonstrating that the plaintiff is entitled to take the property by eminent domain and has deposited the "probable amount of just compensation." (*Robinson v. Superior Court* (2023) 88 Cal.App.5th 1144, 1164; §§ 1255.410, subd. (a), 1255.010; see §§ 1250.350-1250.370.) If the court determines that the plaintiff does not have the right to acquire the property by eminent domain, the court must order the immediate or conditional dismissal of the proceeding. (§§ 1260.110,

---

[2] As a prerequisite to filing the complaint, the public entity also must appraise the property and make a written offer to the owner to purchase the property for no less than the appraised fair market value. (Gov. Code, § 7267 et seq.)

1260.120.)  If the court determines that the plaintiff has the right to take the property by eminent domain and has deposited an amount that satisfies the requirements of the Eminent Domain Law, the court may make a prejudgment order for possession. (§§ 1255.410, 1255.460, 1260.120; see *Redevelopment Agency of San Diego v. Mesdaq* (2007) 154 Cal.App.4th 1111, 1121, disapproved on other grounds in *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1111.)  The case may then proceed to trial on the issue of compensation. (§§ 1235.130, 1260.210, 1263.310, 1263.320.)

### 2.  *The Precondemnation Entry Statutes*

As part of the Eminent Domain Law, the Legislature enacted a separate statutory procedure governing precondemnation entry and testing (§§ 1245.010-1245.060).  These "precondemnation entry statutes" give entities with eminent domain powers the authority to access private property before formal condemnation proceedings for the purpose of performing studies, tests, and similar activities needed to evaluate the property's suitability for the proposed project.  (*Property Reserve I, supra*, 1 Cal.5th at pp. 184, 197; Cal. Law Revision Com., *supra*, (Lexis Advance) foll. §§ 1245.010, 1245.060.)

Section 1245.010 describes the general authority granted to public entities by the precondemnation entry statutes.  (*Property Reserve I, supra*, 1 Cal.5th at p. 175.)  It provides:  "Subject to requirements of this article, any person authorized to acquire property for a particular use by eminent domain may enter upon property to make photographs, studies, surveys, examinations, tests, soundings, borings, samplings, or appraisals or to engage in similar activities reasonably related to acquisition or use of the property for that use."  (§ 1245.010.)

"Section 1245.020 establishes the circumstances under which the property owner's consent or, alternatively, a court order is required before a public entity can enter property to conduct precondemnation testing."  (*Property Reserve I, supra*, 1 Cal.5th at p. 175.)  It provides that where the entry and activities mentioned in section 1245.010 will subject

the person to liability for damage or interference with the possession or use of the property, the condemnor must, before making its entry, secure either the consent of the property owner or a court order.  (§§ 1245.020, 1245.030, 1245.060, subd. (a).)

Section 1245.030 sets forth the procedure to obtain an order for entry.  (*Property Reserve I, supra*, 1 Cal.5th at p. 175.)  As relevant here, it provides that "[u]pon such petition and after such notice has been given, the court shall determine the purpose for the entry, the nature and scope of the activities reasonably necessary to accomplish such purpose, and the probable amount of compensation to be paid to the owner of the property for the actual damage to the property and interference with its possession and use."  (§ 1245.030, subd. (b).)  After making these determinations, the court may issue an order for entry.  (§ 1245.030, subd. (c).)  The order must "prescribe the purpose for the entry and the nature and scope of the activities to be undertaken," and it must require the condemner "to deposit with the court the probable amount of compensation."
(§§ 1245.030, subd. (c), 1245.050.)

If the condemner's entry and testing activities "cause actual damage to or substantial interference with the possession or use of the property," the owner may recover for that damage or interference either by filing a civil action or by applying to the court to recover from the funds on deposit.  (§ 1245.060, subds. (a), (c).)  Upon application, the court shall determine and award the amount the owner is entitled to recover out of the funds on deposit.  (§ 1245.060, subd. (c).)  If the funds on deposit are insufficient to pay the full amount of the award, the court "shall enter judgment for the unpaid portion."  (*Ibid.*)  Unless waived, the owner has a right to a jury trial on the amount of compensation for any precondemnation damage or interference.  (*Ibid.*)

C.      *DWR's Eminent Domain Power*

DWR is a state agency with the right to exercise the power of eminent domain for certain purposes.  (See Gov. Code, § 15855, subd. (b).)  DWR's eminent domain power is set forth in Water Code sections 250 and 11575.

8

Water Code section 250 authorizes DWR to "acquire by eminent domain any property necessary for state water and dam purposes." (Wat. Code, § 250; see Wat. Code, §§ 253, 258.) However, it also provides: "[DWR] shall not commence any such proceeding in eminent domain unless the project for which the property is being acquired has been authorized and funds are available therefor." (Wat. Code, § 250.) (For ease of reference, we will refer to this limitation as the "project approval" requirement.)

Water Code section 11575 authorizes DWR to acquire by eminent domain "any and all water, water rights, rights-of-way, easements, land, . . . and property" as DWR determines to be necessary for effectuating the construction, maintenance, and operation of the Central Valley Project water storage and delivery system. (Wat. Code, § 11575; see Wat. Code, §§ 11577, 11580; see also Wat. Code, §§ 11104, 11200, 11201.) However, like Water Code section 250, Water Code section 11580 imposes a project approval requirement. It provides that DWR may exercise the power of eminent domain to acquire property only "if the project for which the property is being acquired has been authorized and funds are available therefor." (Wat. Code, § 11580.)

BACKGROUND FACTS AND PROCEDURE

As recounted in our prior opinion (*Property Reserve, Inc. v. Superior Court* (2016) 6 Cal.App.5th 1007 (*Property Reserve II*)), this appeal arises from a series of petitions filed by DWR under the precondemnation entry statutes. (*Id*. at p. 1015.) Between 2008 and 2009, DWR filed more than 150 separate petitions seeking entry onto properties to conduct preliminary environmental studies and geological testing activities. (*Ibid*.) DWR maintained that these activities were necessary to comply with environmental laws and to determine the suitability of each property for a potential water conveyance project in the Sacramento-San Joaquin Delta. (*Property Reserve I, supra*, 1 Cal.5th at p. 166.)

In June 2009, the superior court granted a request to coordinate the numerous entry petitions in a single proceeding before the San Joaquin County Superior Court. (*Property Reserve II, supra*, 6 Cal.App.5th at p. 1015.)

9

Beginning in 2010, the trial court held hearings on the proposed environmental and geological activities. (*Property Reserve II, supra*, 6 Cal.App.5th at p. 1016.) Following the hearings, the trial court authorized DWR to enter and to conduct the environmental activities under specified conditions and limitations. (*Ibid*.; *Property Reserve I, supra*, 1 Cal.5th at pp. 166, 169-170.) The trial court denied entry to conduct the geological activities, ruling that the activities constituted a taking and therefore could be accomplished only through a direct condemnation action, not using the precondemnation procedure. (*Property Reserve II,* at p. 1016; *Property Reserve I,* at pp. 166, 173.) The trial court's order relied heavily upon the California Supreme Court's 1923 decision in *Jacobsen v. Superior Court* (1923) 192 Cal. 319 (*Jacobsen*), superseded by statute as stated in *Property Reserve I,* at page 173, which denied a public entity's request to conduct similar boring/drilling activities under an earlier precondemnation entry statute. (*Property Reserve I,* at p. 173.)

Both DWR and the landowners sought review of the trial court's rulings. (*Property Reserve I, supra*, 1 Cal.5th at p. 166.) This court affirmed the order denying entry to conduct the geological testing and reversed the order granting entry to conduct the environmental studies, opining that the proposed activities constituted a taking or damaging of property and that the precondemnation entry statutes did not provide adequate constitutional protections to landowners. (*Property Reserve II, supra*, 6 Cal.App.5th at p. 1016.) DWR instead was required to commence a classic condemnation action. (*Property Reserve I,* at p. 167.)

The California Supreme Court reversed. (*Property Reserve I, supra*, 1 Cal.5th at pp. 167-168, 213.) "Without determining whether the proposed geological activities and environmental activities would constitute a taking or damaging under the state Constitution, the high court ruled the [precondemnation] entry statutes provide a constitutionally valid eminent domain proceeding by which a public agency holding the power of eminent domain may enter property to conduct precondemnation tests so long

10

as the entry statutes are reformed to permit a landowner to obtain a jury determination of damages."  (*Property Reserve II, supra*, 6 Cal.App.5th at p. 1016.)

In June 2017, following the California Supreme Court's decision in *Property Reserve I*, the trial court issued an order approving and confirming DWR's authority to conduct the proposed environmental and geological activities, including borings and cone penetrometer tests.  The trial court expressly found that DWR is a " 'person authorized to acquire property for a particular use by eminent domain' " within the meaning of the precondemnation entry statutes.

In April 2019, Governor Gavin Newsom issued an executive order directing state agencies to assess a new, single-tunnel Delta conveyance project to modernize the state's water infrastructure (hereafter, the Delta Conveyance Project).  (See *Department of Water Resources Environmental Impact Cases* (2022) 79 Cal.App.5th 556, 568.)

From February 2022 through November 2023, the trial court issued three additional orders under the precondemnation entry statutes authorizing DWR to enter private properties to conduct environmental, cultural, or geological investigations.  In each case, the trial court found that (1) DWR was a " 'person authorized to acquire property . . . by eminent domain' " under section 1245.010; (2) DWR was not required to initiate a classic condemnation action for the precondemnation entry and testing activities; and (3) DWR was not required to comply with the project approval requirements of Water Code sections 250 and 11580.

In December 2023, DWR filed a "Notice of Determination" under the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.), indicating that it had certified a final environmental impact report for the Delta Conveyance Project and approved that project.  (DWR, Delta Conveyance Project Notice of Determination, (Dec. 21, 2023).)

In August 2024, DWR filed a motion to expand the coordinated proceeding to include 18 (later reduced to 16) new petitions for entry under the precondemnation entry

11

statutes. The stated purpose for the petitions was, as before, to conduct environmental, cultural, and geological investigations, including borings and cone penetrometer tests, in connection with the Delta Conveyance Project.

The trial court added the petitions to the consolidated proceeding and held an evidentiary hearing on DWR's request for an entry order. Landowners opposed the petitions. On December 16, 2024, the trial court entered an order granting the petitions. The landowners now appeal that order.

DISCUSSION

The principal issue before us is whether the project approval requirements of Water Code sections 250 and 11580 apply to precondemnation entry and testing activities under section 1245.010 et seq. However, before we address the merits, we consider the threshold question of whether we have jurisdiction to entertain this appeal.

I

*Appealability*

"The existence of an appealable order or judgment is a jurisdictional prerequisite to an appeal. [Citation.] Accordingly, if the order or judgment is not appealable, the appeal must be dismissed." (*Canandaigua Wine Co., Inc. v. County of Madera* (2009) 177 Cal.App.4th 298, 302.) The right to appeal is wholly statutory, and a judgment or order is not appealable unless expressly made so by statute. (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 108; *Teal v. Superior Court* (2014) 60 Cal.4th 595, 598.)

Here, the landowners contend that the trial court's entry order is appealable either under section 904.1, subdivision (a)(1), as a final order (or judgment) in a special proceeding, or under section 904.1, subdivision (a)(6), as an order granting an injunction. In response, DWR notes potential arguments against appealability (see, e.g., *Los Angeles v. Schweitzer* (1962) 200 Cal.App.2d 448, 452 [finding that an entry order issued under a predecessor statute was not appealable]) but chooses not to contest appealability given the case's procedural history. We accept the concession.

The California Supreme Court's decision in *Property Reserve I, supra*, 1 Cal.5th 151, also supports the conclusion that the trial court's entry order is appealable. (See also *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5-11; *County of Humboldt v. Appellate Division of Superior Court* (2020) 46 Cal.App.5th 298, 310; *PV Little Italy, LLC v. MetroWork Condominium Assn.* (2012) 210 Cal.App.4th 132, 142.) We therefore proceed to the merits of this appeal.

II

*The "Project Approval" Requirements*

In this appeal, the landowners do not question whether the activities at issue in this proceeding fall within the scope of the precondemnation entry statutes. Nor do they question whether the procedure embodied in the precondemnation entry statutes satisfies the constitutional requirements of the California takings clause. Instead, the landowners argue—as they have throughout this consolidated proceeding—that DWR lacks authority to conduct any precondemnation testing activities unless it first satisfies the project approval requirements of Water Code sections 250 and 11580. In other words, the landowners argue that DWR is not authorized to perform precondemnation activities for a potential project unless "the project for which the property is being acquired has been authorized and funds are available therefor." (Wat. Code, §§ 250, 11580.)

Alternatively, because the proposed activities extend beyond " 'innocuous or superficial' activities and 'rise[] to the level of a taking or damaging of property," the landowners argue that DWR lacks authority to acquire the property interests necessary to perform those activities unless the project is fully authorized and funded.

The landowners identify the relevant "project" as the Delta Conveyance Project. And because the Delta Conveyance Project is not fully authorized or funded, the landowners contend DWR lacks statutory authority to carry out the precondemnation entry and testing activities.

13

We reject both contentions. We conclude that the project approval requirements in Water Code sections 250 and 11580 are not prerequisites to precondemnation entry or testing activities, irrespective of whether those activities constitute a taking of property under the state takings clause. We reach that conclusion based on the plain language of the statutes as well as the California Supreme Court's decision in *Property Reserve I*.

We begin with the language of the statutes, giving the words their usual and ordinary meaning. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.) As described above, section 1245.010 explicitly authorizes a public entity that is "*authorized to acquire property for a particular use by eminent domain*" to enter upon the property to conduct studies, surveys, examinations, samplings, borings, or similar activities reasonably related to the acquisition or use of the property. (§ 1245.010, italics added.) This language does not require the condemning entity to demonstrate that the entry or testing relates to an acquisition of property for a proposed project, or that the project for which the property is being acquired has been authorized and funded. It requires only that the condemning entity possess the authority to acquire property by eminent domain.

DWR satisfies that standard—Water Code section 250 provides that DWR "may acquire by eminent domain any property necessary for state water and dam purposes." (See Wat. Code, §§ 253, 258.) Water Code section 11575 similarly provides that DWR "may acquire . . . by . . . eminent domain . . . any . . . property or appurtenances thereto . . . as [DWR] determines to be required and necessary for the proper construction, maintenance, and operation of the [Central Valley Project] . . . ." (See Wat. Code, §§ 11577, 11580.) These general grants of authority to acquire property by eminent domain satisfy the threshold requirement of section 1245.010 that DWR be "authorized to acquire property . . . by eminent domain."

By contrast, the project approval requirements in Water Code sections 250 and 11580 are limitations on DWR's exercise of its eminent domain power to *acquire* property for a proposed project. In particular, the second sentence in Water Code section

14

250 states: "[DWR] shall not *commence any such proceeding* in eminent domain *unless the project for which the property is being acquired* has been authorized and funds are available therefor." (Italics added.) In the same vein, Water Code section 11580 conditions DWR's right to "*exercise* the power of eminent domain *to acquire*" property on project authorization and funding. (Italics added.)

The difference in wording shows that the precondemnation entry statutes and the project approval requirements serve distinct legislative goals. The precondemnation entry statutes are intended to allow precondemnation testing and similar activities by any person possessing the authority to commence a classic condemnation action to acquire property for a public use. The project approval requirements are intended to impose timing restrictions on DWR's ability to exercise that authority, i.e., to regulate when DWR may commence a classic condemnation proceeding.

The landowners conflate these two concepts. They argue that under Water Code sections 250 and 11580, DWR only has eminent domain authority if the project for which the property is being acquired has been authorized and funded. If not, DWR lacks *any* eminent domain authority, including the authority to carry out testing activities under the precondemnation entry statutes.

However, as DWR notes, the landowners' argument would effectively render the precondemnation entry statutes meaningless. DWR would be forced into the irrational position of financing a project *before* performing the preliminary investigations needed to assess the property's suitability for that project. This approach would strip the precondemnation entry and testing process of its intended function, which is to enable the public entity to determine whether the property is suitable and should be acquired by eminent domain.[3] (*Property Reserve I, supra*, 1 Cal.5th at p. 197.)

---

[3] We also are not persuaded by the landowners' argument that DWR could avoid this absurdity by defining the "project" that must be authorized and funded as an

15

The landowners' argument also conflicts with the California's Supreme Court's decision in *Property Reserve I, supra*, 1 Cal.5th 151, which is now law of the case. (See *Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491.) As discussed above, this court had concluded that the precondemnation entry statutes cannot be used to carry out the geological and environmental activities proposed by DWR. (*Property Reserve I, supra*, 1 Cal.5th at pp. 166-167, 173-174.) Relying on *Jacobsen, supra*, 192 Cal. 319, a divided panel of this court held that if the state sought to take property or perform activities that will result in a taking, the California Constitution required the state to directly condemn the affected property interest in a constitutionally adequate condemnation suit. (*Property Reserve, Inc. v. Superior Court* (2014) 224 Cal.App.4th 828, 836, 846, 848-849, 852, review granted Jun. 25, 2014, S217738, reversed by *Property Reserve I, supra*, 1 Cal.5th 151.) This court concluded that DWR's proposed geological and environmental activities would result in a taking, and that the precondemnation entry statutes do not provide a "constitutionally adequate" procedure for the government to acquire the affected property interests. (*Property Reserve, Inc.,* at pp. 836, 840-842, 854-856, 856, revd.)

The California Supreme Court reversed the decision issued by this court. (*Property Reserve I, supra*, 1 Cal.5th at p. 168.) After reviewing the precondemnation entry statutes, the court held that the plain language of the statutes shows they were intended to apply to any testing activities "reasonably necessary to determine" whether the public entity should acquire the property by use of eminent domain, which includes the borings, samplings, and other activities proposed by DWR. (*Id*. at pp. 177-178, 184.) The court recognized that such activities may result in a taking or damaging of property

---

"investigation" or "feasibility" project. There is no statute—other than section 1245.010—authorizing a public entity to exercise the power of eminent domain *solely* for the purpose of conducting preliminary investigations. Thus, the logical import of the landowners' argument is that DWR would have authority to conduct preliminary investigations only *after* authorizing and funding the proposed project, or not at all. This would render nugatory the precondemnation entry statutes.

under the takings clause. (*Id*. at pp. 192, 198-199, 209, 212.) Nevertheless, the court held that the legislative intent was to "create a procedure under which a public entity that is considering acquisition of property for a public project can conduct the type of extensive investigatory testing and exploration that the *Jacobsen* decision concluded was not permitted under the entry statute in effect at that time." (*Id*. at p. 184.)

The California Supreme Court next turned to the question of whether the precondemnation entry and testing procedure satisfies the constitutional requirements of the takings clause. (*Property Reserve I, supra*, 1 Cal.5th at pp. 185-194.) In holding that it does, the court observed that the state takings clause does not always require the commencement of a classic condemnation action when property is taken or damaged for public use. (*Id*. at p. 189, citing Cal. Const., art. I., § 19, subd. (a).) The court emphasized the distinction between a classic condemnation proceeding, where the public entity seeks to obtain title or a compensable property interest in the property, and a precondemnation entry, where the public entity seeks temporary access to property to conduct investigations needed to decide whether the property is suitable for condemnation. (*Property Reserve I,* at p. 190; see *id*. at p. 199.) The court concluded that the procedure embodied in the precondemnation entry statutes is "constitutionally adequate and appropriate" to enable the owner to obtain just compensation for any injury to the property, so long as the property owner has the option of a jury trial on the measure of damages. (*Id*. at pp. 167, 190, 192-194, 197, 200-201.)

The California Supreme Court therefore concluded that the state takings clause does not preclude the Legislature from authorizing a public entity to enter private property and conduct "substantial precondemnation activities" without the owner's consent or the commencement of a classic condemnation action. (*Property Reserve I, supra*, 1 Cal.5th at pp. 198, 202.) To conclude otherwise, the court observed, would contravene the "entire purpose of precondemnation entry and testing," which is "to enable the public entity to determine whether or not the property is suitable and should be

17

acquired for a public project and whether a classic condemnation action should be commenced." (*Id.* at p. 197; see Cal. Law Revision Com., *supra*, (Lexis Advance) foll. §§ 1245.010, 1245.060.)

*Property Reserve I* is dispositive of the contentions in this appeal, making clear that the procedures governing precondemnation entry and testing activities are separate and distinct from the procedures that apply when a public entity seeks to *acquire* property in a classic condemnation action. (*Property Reserve I, supra*, 1 Cal.5th at pp. 190, 197-203.) The decision holds that a classic condemnation action is not required for precondemnation entry and testing. (*Id.* at p. 207.) Since the project approval requirements in Water Code sections 250 and 11580 are limitations on DWR's "exercise" of its classic eminent domain power to *acquire* property for a project, and a classic condemnation proceeding is not required for precondemnation entry and testing activities, the project approval requirements simply do not apply. The only requirement is that DWR be legally "authorized to acquire property for a particular use by eminent domain." (§ 1245.010.) And this is true irrespective of whether the proposed precondemnation activities will constitute a taking or damaging of property under the takings clause. (*Property Reserve I,* at pp. 192, 198-199.)[4]

Here, because DWR is authorized to acquire property by eminent domain for state water and dam purposes, DWR has authority under the precondemnation entry statutes to "enter upon [the] property to make photographs, studies, surveys, examinations, tests, soundings, borings, samplings, or appraisals or to engage in similar activities reasonably

---

[4] This conclusion also disposes of landowners' argument that a classic condemnation action is required because the geotechnical and environmental activities constitute "*per se* physical takings" under *Cedar Point Nursery v. Hassid* (2021) 594 U.S. 139. Even if these activities constitute physical takings, *Property Reserve I* establishes that the precondemnation entry statutes provide a constitutionally adequate procedure to enable landowners to obtain just compensation. (*Property Reserve I, supra*, 1 Cal.5th at pp. 186-187, 200-202, 211-212.)

related to acquisition or use of the property for that use." (§ 1245.010.)  Accordingly, the trial court properly granted the entry order.

DISPOSITION

The order of the trial court granting entry to perform the environmental, cultural, and geological activities is affirmed.  DWR shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


_____\s\_____

Krause, J.

We concur:


_____\s\_____

Renner, Acting P. J.


_____\s\_____

Wiseman, J.[*]

---

[*]    Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.